[No. 33033. Department One. September 15, 1955.]

BETTY J. MOODY, *Respondent,* v. OSCAR H. MOODY, *Appellant.*[1]

[1]Reported in 288 P. (2d) 229.

*C. Orno Shoemaker* and *S. Dean Arnold,* for appellant.

*Donald W. Moore, amicus curiae.*

SCHWELLENBACH, J.—February 9, 1954, Betty J. Moody filed a divorce complaint in Asotin county against her husband, Oscar H. Moody. May 18, 1954, the superior court entered a default judgment of divorce in favor of the plaintiff.

June 8, 1954, Oscar H. Moody was charged in the superior court of Asotin county with the crime of first degree murder. June 16, 1954, Mr. Moody gave notice of appeal from the judgment of divorce. His present counsel in the murder case represents him in this appeal. The prosecuting attorney of Asotin county is appearing *amicus curiae* under direction of the trial court on behalf of respondent. It would appear that neither party is particularly interested in the maintenance or the sanctity of the marriage relationship. Appellant is interested in having the divorce decree set aside in order that Mrs. Moody could then be prevented from testifying against him in the murder trial, while the prosecutor is interested in having the decree affirmed in order that Mrs. Moody may so testify.

The sole ground urged for reversal is that the complaint did not state facts sufficient to constitute a cause of action for divorce. Paragraph V alleged:

"That for some time last past, through incompatability of temperment, plaintiff has been the victim of mental cruelty inflicted on her by the defendant, which has made her home-life and wellbeing burdensome, to the point it has become impossible for her to live and cohabit with the defendant; that all of said acts were without just cause or provocation on the part of plaintiff."

RCW 26.08.020 sets out ten statutory grounds for divorce. Subdivision (5) states:

"Cruel treatment of either party by the other, or personal indignities rendering life burdensome."

The courts of this state are limited in granting divorces to the grounds listed in the divorce statute. *Fix v. Fix,* 33 Wn. (2d) 229, 204 P. (2d) 1066; *Donaldson v. Donaldson,* 38 Wn. (2d) 748, 231 P. (2d) 607, 25 A. L. R. (2d) 919. Incompatibility of temperament is not a ground for divorce. In *Neff v. Neff,* 30 Wn. (2d) 593, 192 P. (2d) 344, we said: ". . . neither incompatibility, uncongeniality, dissatisfaction, nor unhappiness constitutes grounds for divorce."

Mental cruelty as such is not a ground for divorce.

Respondent argues that the gravamen of the complaint is cruelty. Cruel treatment may consist of actions, words, silence, neglect, or conduct. However, incompatibility of temperament cannot be the sole basis of cruel treatment. Webster's New International Dictionary (2d. ed.) (1954) defines the word "through":

"By means of . . .; by reason of; in consequence of; because of."

The complaint does not allege that the defendant was guilty of cruel treatment. It alleges that the plaintiff became the victim of mental cruelty by means of, by reason of, in consequence of, because of, incompatibility of temperament. That was what caused her to be the victim of mental cruelty. Incompatibility of temperament, not cruelty, is the gravamen of the allegation. Had the defendant appeared and

demurred to the complaint, it would have been incumbent on the trial court to sustain the demurrer. However, defendant did not appear and attack the complaint. He sat idly by and permitted a default judgment to be taken against him.

RCW 4.32.190 provides:

"If no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting always the objection that the court has no jurisdiction, or that the complaint does not state facts sufficient to constitute a cause of action, which objection can be made at any stage of the proceedings, either in the superior or supreme court."

See, also, Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953.

In *Hamilton v. Johnson,* 137 Wash. 92, 241 Pac. 672, in discussing a prior statute identical with the above statute, we said:

"This statute has been upon the statute books substantially in its present form since the first session of the territorial legislature of 1854. See Laws of 1854, p. 139. The first of these objections, that the court has no jurisdiction, is still in full force and effect, but it neither adds to nor restricts the powers of the court. A judgment entered without jurisdiction is a nullity, and no court, whether it be the court of original or of appellate jurisdiction, will continue an action or proceeding where it is made to appear to it that it is without jurisdiction.

"The second of the provisions has been much modified and limited by subsequent statutes. Those most pertinent of these are the statutes relating to amendments of pleadings. Now a party may amend his pleadings, when attacked in the superior court, almost as a matter of course; and this court, in considering an appealed cause, is admonished to disregard all technicalities, and 'consider all amendments which could have been made as made.' It is, of course, at once apparent that, if the provision of the statute under consideration is to be given its apparent literal meaning—if, in other words, a complaint may be searched for any sort of defect at any stage of the proceedings—the benefit of the provision of these amendatory statutes will, in many instances, be denied the litigant. It is undoubtedly still the rule that, if the complaint shows upon its face that the plain-

tiff has no cause of action and under no circumstances can have a cause of action, the court will stay the action at the earliest time the matter is brought to its attention. But technical defects, or defects that can be cured by amendment, can avail the objector only in the case he raises the objection either by motion or demurrer before he enters upon the trial. These rules have been repeatedly announced by this court."

See, also, *Coats v. West Coast Fire & Marine Ins. Co.,* 4 Wash. 375, 30 Pac. 404, 850; *Jacobson v. Aberdeen Packing Co.,* 26 Wash. 175, 66 Pac. 419; *Stewart v. Beghtel,* 38 Wn. (2d) 870, 234 P. (2d) 484, and cases cited therein. In the latter case, we said:

"The question whether a complaint states a cause of action may be raised on appeal, but unless the record shows that such question was passed upon by the trial court we are not inclined to hold a complaint insufficient unless it appears from such complaint no cause of action can be stated by amendment or otherwise, or it shows on its face plaintiff is not entitled to any relief."

None of the above cases involved a default judgment. They all went to trial, and the objections to the complaints could have been raised by demurrer. In *State ex rel. First Nat. Bank v. Hastings,* 120 Wash. 283, 306, 207 Pac. 23, we said:

"It is elementary law that a default judgment cannot award any relief beyond that which the facts alleged in the complaint in the action show the plaintiff legally entitled to. This also means, of course, that if a complaint wholly fails to state facts legally entitling the plaintiff to any recovery, or states facts affirmatively showing that the plaintiff has no right of recovery, as those complaints did, a default judgment rendered thereon is void, just as such a default judgment would be void in so far as it awarded relief beyond that which the allegations of the complaint show the plaintiff legally entitled to."

In *State ex rel. Summerfield v. Tyler,* 14 Wash. 495, 45 Pac. 31, we said:

"It is familiar law that a judgment rendered in an action in which a court has jurisdiction of the person upon a complaint which does not state a cause of action is not void but

simply erroneous, and it is upon this principle that the contention of the appellant, that the judgment in question is not void, is founded. But, in our opinion, if the county was not subject to garnishee process, the complaint in the action in which the judgment in question was rendered not only failed to state a cause of action, but affirmatively showed that no judgment could be rendered thereon against the county."

■ It was intimated in the *Hastings* case that the first sentence in the above statement was intended to be applicable only to complaints subject to demurrer in actions resulting in judgments other than by default. With this we cannot agree. We can see no valid reason for making a distinction between situations where a defendant answers and goes to trial and does not demur to a complaint, and where he sits idly by and permits a judgment by default, based on a demurrable complaint. In either situation, he waives his right to attack the complaint for the first time in an appeal to this court. Of course, as the above cases point out, there is no waiver if the complaint shows on its face that the plaintiff has no cause of action and under no circumstances can have a cause of action. The complaint in the instant case does not show on its face that the plaintiff is not entitled to any relief. Appellant has waived his right to attack the complaint for the first time in this court.

■ There is another reason why the judgment should be affirmed. We held in *Roche v. McDonald,* 136 Wash. 322, 239 Pac. 1015, 44 A. L. R. 444, that a default judgment, rested solely upon the allegations of a complaint so deficient in substance as to conclusively negative the existence of a cause of action at the time of its rendition, is void and can be attacked at any time. However, in *Aid v. Bowerman,* 132 Wash. 319, 232 Pac. 297, we said this:

"We do not fail to recognize the rule invoked by counsel for Mrs. Bowerman that a default judgment cannot lawfully award relief in excess of the cause of action set up in the complaint, as has been held by this court in harmony with the rule generally prevailing in other jurisdictions. *Bank of California v. Dyer,* 14 Wash. 279, 44 Pac. 534; *Anderson v. Burgoyne,* 60 Wash. 511, 111 Pac. 777; *Bates v. Glaser,*

130 Wash. 328, 227 Pac. 15; 15 R. C. L. 605. But our present inquiry must also proceed in the light of the equally well-recognized rule that, after the rendering of final judgment in a case, in the absence of any attack upon the complaint for want of sufficient statement of facts constituting a cause of action, which situation is, of course, presented upon default, the complaint will be most liberally construed as stating a cause of action warranting the granting of the relief prayed for."

As we have already pointed out, the complaint in the instant case was demurrable. However, we cannot say that it was so deficient in substance as to conclusively negative the existence of a cause of action. Respondent, in her allegation, skirted around subdivision (5) of the divorce act. She prayed for a divorce and the custody of the minor child of the parties. Appellant did not contest. He permitted her to obtain a default judgment of divorce. Under those circumstances, "the complaint will be most liberally construed as stating a cause of action warranting the granting of the relief prayed for."

The judgment is affirmed.

HAMLEY, C. J., DONWORTH, and OTT, JJ., concur.

FINLEY, J. (concurring in the result)—I concur in the result reached in the majority opinion, but for different reasons than expressed therein.

The facts as to how this matter arose, and as to the procedural steps taken or not taken in the trial court, are as set out in the majority opinion. Stated briefly, the defendant husband, after a judgment of default against him in a divorce action, is appealing to this court to reverse the judgment of the trial court. His main contention here is that the complaint of the plaintiff wife does not state facts sufficient to constitute a cause of action for divorce. As indicated in the majority opinion, paragraph V of the complaint alleged:

"That for some time last past, through incompatability of temperment, plaintiff has been the victim of mental cruelty inflicted on her by the defendant, which has made her home-life and wellbeing burdensome, to the point it has

become impossible for her to live and cohabit with the defendant; that all of said acts were without just cause or provocation on the part of plaintiff."

Obviously, the significant question before us is whether or not the above-quoted paragraph of the complaint sets out facts sufficient to state a cause of action under subdivision (5) of RCW 26.08.020 (the divorce act of 1949). The latter sets out as grounds for divorce the following:

· "Cruel treatment of either party by the other, or personal indignities rendering life burdensome."

The majority opinion begins by interpreting paragraph V strictly, reasoning that it only sets out incompatibility as the ground alleged as the basis for granting the divorce in the instant case. Thereupon, at this point, the majority opinion states that, if a demurrer had been timely interposed, it should have been sustained, resulting in a dismissal of the plaintiff wife's complaint for divorce. However, the majority point out that the defendant husband did not interpose a timely demurrer, but sat idly by and permitted judgment by default to be entered. From the latter, it is then reasoned (a). that the complaint must now be liberally construed in favor of the plaintiff (citing *Aid v. Bowerman,* 132 Wash. 319, 232 Pac. 297; and *Stewart v. Beghtel,* 38 Wn. (2d) 870, 234 P. (2d) 484;), and, furthermore, *in effect,* it is reasoned (b) that, unless it can be said that the complaint is "so deficient in substance as to conclusively negative the existence of a cause of action," it may not be successfully attacked for the first time on appeal.

It seems to me that the reasoning of the majority is somewhat circuitous. I prefer reaching the same result, I believe more directly, by interpreting paragraph V of the complaint liberally at the outset. I think this should and quite properly may be done, as is indicated in the following discussion.

In *Neff v. Neff,* 30 Wn. (2d) 593, 594, 192 P. (2d) 344, we said:

". . . neither incompatibility, uncongeniality, dissatisfaction, nor unhappiness constitutes grounds for divorce."

However, cruelty, generally speaking, is a ground for divorce, and the phrase, "cruel treatment of either party by the other, or personal indignities rendering life burdensome," spells out more specifically the statutory grounds for divorce. In *Detjen v. Detjen,* 40 Wn. (2d) 479, 480, 244 P. (2d) 238, the court said:

*"We have recognized emotional or personality differences in individuals,* and *have approached* the *problem of divorce* in terms of *subjective rather than objective standards. Thompson v. Thompson,* 16 Wn. (2d) 78, 132 P. (2d) 734; *Baselt v. Baselt,* 37 Wn. (2d) 461, 224 P. (2d) 631. In other words, in applying or interpreting the statutory ground for divorce, implicit in the words 'cruelty and personal indignities,' we have recognized that *common sense requires a subjective approach* to the problems of divorce, and, *for example,* in *Thompson v. Thompson, supra,* (p. 80), we said:

" 'Language can, and frequently does, constitute cruel treatment and render life burdensome. The test, however, is subjective rather than objective. It is not the words used, but the effect of them upon the aggrieved party that is determinative.' " (Italics mine.)

Thus, the statute, in referring to "cruel treatment of either party by the other, or personal indignities *rendering life burdensome*" (italics mine), and our decisions defining this language, contemplate or are concerned with *results*; that is, the *effects* of the conduct of one spouse upon the other. This seems to have been the reasoning of the court in *Neff v. Neff, supra.* There, the testimony of the parties clearly indicated each was indifferent and unaffected by the conduct of the other. The court, looking for adverse or detrimental results or effects upon the spouses, *found none,* and denied a divorce to either one. In the instant case, the complaint clearly indicates the wife has been the victim of mental cruelty inflicted upon her by the husband, rendering "her home life and well being burdensome," to an extreme degree. Thus, the complaint speaks in terms of *results or effects* of the conduct of one spouse upon the other.

If, in the case at bar, the complaint merely had referred to *incompatibility* of *temperament,* this may well have been inadequate, in that it would have failed to state a statutory

ground for divorce, as emphasized in the *Neff* case, *supra*. However, in the instant case, the complaint goes further. As emphasized heretofore, it refers to mental cruelty *inflicted upon the wife, making her home life and well being burdensome* "to the point it has become impossible for her to live and co-habit with the defendant." The divorce act of 1949 (Laws of 1949, chapter 215, § 11, p. 701; Rem. Supp. 1949, § 997-11) provides, in part:

"In all cases where the Court shall grant a divorce . . . it shall be *for cause distinctly stated in the complaint* . . ." (Italics mine.)

The foregoing statute does not set out any specific combination of words, the use of which is *mandatory and magical,* in order to state effectively a cause of action in a complaint for a divorce, deviation from which by a pleader will result in the cause of action being dismissed. The requirement of the statute is that a *cause of action be stated distinctly,* and I might add, parenthetically, with reasonable clarity. The general principle that the language of a complaint must be given its reasonable and ordinary meaning applies to divorce cases as well as to other causes of action. If, in the instant case, the language of the complaint is accorded reasonable and ordinary interpretation and meaning, *it provides adequate notice to any one interested,* including the defendant, the trial judge, and the county prosecutor, that cruelty on the part of defendant husband was urged by Betty Moody as a ground for divorce in her complaint.

Certainly, an argument can be advanced against the foregoing reasoning and the conclusion of law directly resulting therefrom—that the complaint stated a cause of action and was not subject to attack by demurrer. But it appears to me that such an argument can be made only by viewing the complaint very strictly or, perhaps it may be said, hypercritically, and by ignoring the fact emphasized above—that the language of the complaint, if given ordinary meaning and a reasonable interpretation, provided reasonable notice to all concerned as to the ground for divorce alleged by Mrs. Moody.

The trend of modern authorities is in the direction of notice pleading. This, in combination with the technique of pretrial conference, where the latter is used, enables counsel and the courts to segregate and identify the real questions of substance in a lawsuit. Litigation is disposed of upon its merits, with a minimum of time and effort by all concerned, and, usually, at considerably less expense to litigants. Regarding matters of pleading, as suggested heretofore, *the significant inquiry* relative to the language in a complaint is whether it provides *reasonable notice of the pleader's contentions, the issues, and the questions involved in a lawsuit.*

This reasoning, depending upon one's point of view, may appear to be either (a) somewhat naive and unorthodox, or (b) a somewhat enlightened approach, as opposed to the strict hypertechnical approach of common law pleading and of the authorities thereon of relatively only a few decades ago. Then, faithful, if not slavish, adherence to the strict, technical rules of common-law pleading was insisted upon. It was technicality for technicality's sake. Often, there was no other apparent reason for penalizing a pleader, dismissing his cause, throwing him and any justice involved in his case to the winds. Such an approach seems to have been a relic of the sterile scholasticism of the Middle Ages. The approach certainly was not functional in the sense this term is used in modern legal philosophy. Pound, *The Call for a Realist Jurisprudence,* 44 Harv. L. Rev. 697; Cohen, *Transcendental Nonsense and the Functional Approach,* 35 Col. L. Rev. 809. Today, the aforementioned early common-law approach is not in keeping with the spirit or the sense of modern Anglo-American legal philosophy. It should be relegated to the Middle Ages, where it belongs, if anywhere. It emphasized form rather than substance. It should have no part in our modern jurisprudence, where the trend is, and should be, toward emphasis upon justice and substance rather than upon form and technicality.

Although at the outset hereof it is emphatically noted that *the only significant question in this case is whether or not the complaint states a cause of action,* it may be men-

tioned that an examination of the statement of facts shows that, *at the hearing in the trial court,* the following question directed to Mrs. Moody and her answer emphasized mental cruelty on the part of the husband as the ground for the divorce:

"Q. Mrs. Moody, you complained in your original Complaint of mental cruelty on the part of the defendant which has made your home-life unbearable and impossible to continue as man and wife, is that right? A. That is right."

Appellant's assignment of error, directed at the trial court's findings of fact, does not comply with Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953, since no portion of any of the trial court's findings is set out anywhere in appellant's brief. The result is that the findings of the trial court will not be disturbed, and no question is before us relative to the findings. *Kaiser Aluminum & Chemical Corp. v. Department of Labor & Industries,* 43 Wn. (2d) 584, 262 P. (2d) 536.

However, in this connection, it may be observed that an examination of the statement of facts in the case at bar shows that, in any event, the testimony of Mrs. Moody and the findings of the trial court are somewhat in her favor, and that the effect thereof in the instant case could be aptly described by the language from *Detjen v. Detjen, supra,* as follows:

"In reviewing the statement of facts in the instant case, we must recognize that it is a cold, written record of the proceedings in the trial court. But the trial judge had the witnesses before him. He heard them testify, he noted their reactions, their mannerisms, the vocal inflections— all of which often are more indicative of meaning and the true state of things than the bare written words recounting questions asked, and answers given by litigants and witnesses. On the basis of the record alone, the question might be a close one as to whether the findings of the trial court are clearly supported by the evidence. However, the burden is upon the complainant. In the case at bar, the weight or the presumption of validity which we accord findings of the trial court tips the balance favorably in the direction of the wife. The findings of the trial court will not be dis-

turbed, and the judgment in this case is in all respects affirmed."

In the latter connection, this court stated, in effect, in *Bloom v. Bloom,* 57 Wash. 23, 106 Pac. 197, that the findings in a divorce case will be given a liberal construction.

Since I reach the result indicated heretofore as to the meaning and substance of the divorce complaint and the notice it provided as to the grounds of divorce urged by Mrs. Moody, it is my personal view (a) that the complaint states a cause of action, (b) that the instant appeal should fail, and (c) that the default divorce decree entered by the trial court should in all respects be affirmed.