[No. 30306.   Department One.   April 23, 1948.]

RUSSELL C. NEFF, *Respondent,* v. IONE F. NEFF, *Appellant.*[1]

*Eisenhower, Hunter & Ramsdell,* for appellant.

*Rummel & Skoog,* for respondent.

HILL, J.—This is the antithesis of the usual divorce case. The parties are obviously persons of culture and refinement; there were no blows, no profanity, no drinking, no infidelities, no bringing in of neighbors and friends to testify,

[1]Reported in 192 P. (2d) 344.

no drawing of their children into the court to corroborate one or the other. A lady and a gentleman, after more than twenty-one years of married life and with two children, a boy twenty years of age and a girl of sixteen (at the time of trial), having come to what each believed should be a parting of the ways, appeared before a superior court judge and told their respective stories. (The only other witnesses testified merely to property values.) There was no animosity and no rancor, at least not much, and there was willingness by each to concede numerous estimable qualities to the other. There was a notable reticence and restraint in testifying as to details of family life, a fact upon which the trial judge commented as making a decision difficult. It is conceded, however, that for the five years last past, they had lived in the same house with no manifestation of affection by either, and with each apparently indifferent to the other.

This is a situation where it is easy to say that there is nothing to be gained by keeping this man and this woman yoked together; but neither incompatibility, uncongeniality, dissatisfaction, nor unhappiness constitutes grounds for divorce. *McNary v. McNary*, 8 Wn. (2d) 250, 111 P. (2d) 760; *Yost v. Yost*, 16 Wn. (2d) 601, 134 P. (2d) 79.

It seems to us that the eighth cause for divorce under Rem. Rev. Stat., § 982 [P.P.C. § 23-1]:

"Divorces may be granted by the superior court on application of the party injured, for the following causes: . . .

"8. A divorce may be granted to either or both of the parties in all cases where they have heretofore lived or shall hereafter live separate and apart for a period of five consecutive years or more. In all such cases, the divorce may be granted on the application of either husband or wife, and either husband or wife shall be considered the injured party and the period of five years or more shall be computed from the time the separation took place";

was intended to cover, among others, the situation of the mutually indifferent, those who have mutual aversions, and those who simply agree to disagree. It is there provided that "either husband or wife shall be considered the injured party."

There has been much discussion in recent years concerning the time element in this cause for divorce, with the suggestion that it be reduced to two years (and some urge one year), so that, after a waiting period of such length as to demonstrate that there is no hope of reconciliation, a divorce may be granted even though there is no dirty linen to wash, or no desire to wash it publicly. However, this particular cause for divorce is not and could not be invoked in this case, as the parties have not lived separate and apart within the purview of that portion of the statute.

If there is a cause for which a divorce may be granted in this case, it must be found within the fifth subdivision of Rem. Rev. Stat., § 982, which reads as follows:

"Divorces may be granted by the superior court on application of the party injured, for the following causes:   .   .   .
"5.  Cruel treatment of either party by the other, or personal indignities rendering life burdensome."

The husband alleged in his complaint that his wife had, "by numerous annoying acts, deeds and personal indignities, made the home life of the plaintiff burdensome"; and that she had told him she no longer loved him. This allegation of the grounds for divorce was, at the conclusion of the trial, amended to read as follows:

"That for many years the defendant has been guilty of cruelty toward the plaintiff in that she has been indifferent to him and to his health and welfare; that she has refused to discuss mutual problems with him; that she has an aversion for him which has been expressed and manifested by her actions; that she has made it impossible for the plaintiff and the defendant to live in a normal marital relationship for the period of approximately five years."

The wife, in turn, prayed for a divorce in her cross-complaint because her husband had for a number of years adopted and maintained toward her a cold, indifferent, and hostile attitude and had heaped upon her personal indignities rendering her life burdensome in the extreme, and because he had made no effort to conceal that he no longer had any love or affection for her.

Both parties apparently were attempting to come within the rule we announced in *Sabot v. Sabot,* 97 Wash. 395, 166 Pac. 624, where we said:

"Indifference is an indignity and unconcealed aversion is a cruelty within the meaning and intent of the statute. They are more refined but no less substantial than words *or blows or neglect."*

The allegations of the complaint and cross-complaint in the present case are reminiscent of the finding of fact before the court in the *Sabot* case, which read:

" 'That for a period of two years last past the defendant has assumed and maintained towards plaintiff an indifferent attitude, and has made no attempt to conceal that she has neither affection nor regard for the plaintiff, and has by numerous annoying acts and words, made the home life of plaintiff burdensome in the extreme, so that it has become impossible for the plaintiff to longer cohabit and live with said defendant, all of which acts were without just cause or provocation.' "

The testimony in support of the allegations of the complaint and cross-complaint consists of incidents or attitudes which for the most part might be classed as trivia and should have been forgiven and forgotten in the usual give-and-take of married life. We do not, however, regard the wife's permitting a dog in the house, knowing that her husband was allergic to them, as a trivial matter, and his conduct in remaining away from home until that situation had been remedied was fully justified. That, however, occurred almost five years before the action for divorce was started.

The trial judge, who in his long experience must have heard a thousand or more divorce cases, was very doubtful when the husband rested as to whether he had established grounds for divorce. It was upon the wife's admission that, following his return to the home after the dog episode above referred to, she felt an aversion for her husband that the trial judge began to feel that there were grounds for divorce. The trial court made the following finding:

"That for many years the defendant has been guilty of cruelty toward the plaintiff, in that she has been indifferent to him and to his health and welfare. That she has refused

to discuss mutual problems with him. *That she has an aversion for him, which has been expressed and manifested by her actions.* That she has told him that she no longer loves him. That she has by numerous annoying acts and personal indignities made the home life of the plaintiff burdensome, and that she has made it impossible for the plaintiff and defendant to live in a normal marital relationship for a period of approximately five years" (Italics ours);

and upon that finding granted a divorce to the husband.

The wife appeals, contending that the divorce should not have been awarded to the husband but should have been awarded to her. She also appeals from the distribution of the property made by the trial court and the provisions made for the daughter's support; but with that phase of the appeal we are concerned only if we determine that either or both of the parties are entitled to a divorce.

We again quote from the statement from the *Sabot* case:

"Indifference is an indignity and unconcealed aversion is a cruelty within the meaning and intent of the statute. They are more refined but no less substantial than words or blows or neglect."

This statement was not intended to open wide the door for the termination of what have come to be known in the vernacular as "quickie" marriages, where, after a few months, one of the parties comes into court and says, "He [or she] is indifferent to me, Judge." Abandonment, which would evidence both indifference and aversion, must continue for one year before it constitutes a cause for divorce. Rem. Rev. Stat., § 982(4). The *Sabot* statement should be used only against the background of the finding of fact in that case which is set forth on page four of this opinion [*ante* p. 596]. There was no statement of facts before the court on the appeal in that case; the finding was conclusive as to the facts before the court and the sole question was, Do the facts establish grounds for divorce? What we actually held in that case was: Indifference for a period of two years is an indignity and unconcealed aversion for a like period is a cruelty within the intent and meaning of the statute. It will also be observed from the finding of fact

in that case that only one party was guilty of indifference and aversion, and that it was without just cause or provocation. No question of mutual indifference or aversion was involved.

■■ The indifference in the present case has covered a period of five years, but it seems to have been mutual. Our statute, Rem. Rev. Stat., § 982, says that divorces may be granted "on application of the party injured." Where indifference is never manifested in public, so that there is no question of humiliation or embarrassment because of what others may think, but is evidenced only in the privacy of the home, and the indifference is mutual, it is difficult for us to find that there is an injured party. In other words, if a husband is indifferent to his wife, we do not see how her indifference to him constitutes cruelty or a personal indignity; whereas, if he is devoted to her, her indifference to him is cruelty and, if long continued, could warrant a divorce. What we said of "language" in *Thompson v. Thompson*, 16 Wn. (2d) 78, 132 P. (2d) 734, might well be said of "indifference." We there said:

"Language can, and frequently does, constitute cruel treatment and render life burdensome. The test, however, is subjective rather than objective. It is not the words used, but *the effect of them upon the aggrieved party that is determinative*." (Italics ours.)

The husband in the present case has been indifferent to his wife for a period of five years, but she is not entitled to a divorce because that indifference constituted neither cruelty nor personal indignities, for she was equally, if not more, indifferent to him during all of that period. By the same token, the husband could not, by reason of her indifference, establish cruelty or personal indignities to himself.

The trial court's finding on the grounds for divorce appears on page four of this opinion [*ante* pp. 596, 597]. Any finding of indifference by the wife to the husband's health must depend upon the dog incident five years previously. The finding that she refused to discuss mutual problems with him is countered by her testimony that her attempts to dis-

cuss matters were met by silence. The indifference, the lack of affection, and the annoying acts referred to in the finding seem to be mutual and reciprocal. A person may, however, be indifferent toward another without having an aversion for him or her. In the present case, the trial court found that "she has an aversion for him, which has been expressed and manifested by her actions." We find nothing in the record warranting such an aversion. There is no evidence of any aversion by the husband for his wife. If there is an aversion, it is on the part of the wife only; hence it is upon that finding that the divorce, if granted, must rest.

The strongest evidence to support the finding is the following from the cross-examination of the wife:

"Q. Now, . . . you testified that you had a feeling of relief during the time that he was gone—during those three weeks? A. Yes, sir. Q. And you would have liked to have continued that arrangement, wouldn't you? A. Yes, sir. Q. And you indicated that you would, did you not? A. No, I don't think that I ever said that to him. Q. You did not say it to him? A. I might not have said it, but I probably did indicate it. Q. *In fact, you felt quite an aversion to him, didn't you?* A. I did, after he came back. Q. *And you didn't take any pains to conceal that aversion, to him, did you?* A. You mean living with him—I certainly did. Q. Or in any other way? A. I talked to him. Q. And if he came into the room where you happened to be—. A. (Interposing) I stayed right there. Q. You would sometimes get up and leave? A. No, I did not. It was just the reverse of that situation. If he was in the room and I came in there, he got up and left. The usual thing is to sit in the living room after dinner, and not in the kitchen. That is where I sat, and I always sat there ever since I was married, in the living room. We all sat in there until this happened.

"Q. And he had some work to do, which he did in the kitchen? A. Yes. Q. But you never sat there with him, did you? A. There was no reason for it that I could see. He was busy working on his books. Q. Prior to this occasion of his return there had been rather a strained atmosphere in your home for quite some time too, had there not? A. Well, I do not think so. We had little arguments off and on. As I told you, we had these spells when he didn't speak to me for weeks. Q. And you didn't speak to him.

A. But the first few times I tried to talk him out of it, and I did. But finally the next to the last time lasted six weeks, and I made up my mind that he would have to make up by himself.

"Q. It is a fact, and you told him, that you did not realize how much you resented his presence until he was gone for awhile? A. No, I didn't tell him that at all. Q. You were not a bit concerned where he went or what he did, were you? A. I did not ask him where he went. Q. And you were not concerned about the Doctor, were you? A. No, not particularly." (Italics ours.)

It will be noted that the only reference to aversion was in two leading questions asked by counsel; the word "aversion" was his, not hers.

■ It seems to us that the testimony in its entirety falls far short of establishing that she, by her actions, expressed and manifested an aversion for her husband. It would seem that a little less pride and a little more selflessness by either party could have obviated the present situation, and we find ourselves unable to put the finger of primary or original blame on either. We believe that neither the husband nor the wife can be said to be "the party injured" within the purview of our statute (Rem. Rev. Stat., § 982) and that, under the circumstances of this case, neither has established cruelty or personal indignities rendering life burdensome, of a character entitling either to a divorce.

We will agree that there seems to our finite minds little that can be accomplished by keeping this man and this woman tied together by the legal bonds of matrimony, which they have already sundered in spirit and in truth. However, it will be understood by the bar if not by the laity that courts do not put asunder such bonds because it seems socially expedient or desirable so to do, but only because an injured party has established one of the statutory grounds for divorce.

Since we cannot affirm the granting of a divorce in this case, may we express the hope (probably futile, but not necessarily so) that this gentleman and this lady (for so we conceive them to be) may find it in their hearts to make a genuine effort to again make their house a home.

The interlocutory decree of divorce granted to the husband is reversed, with instructions to the trial court to dismiss both the amended complaint and the cross-complaint.

MALLERY, C. J., MILLARD, and SCHWELLENBACH, JJ., concur.

SIMPSON, J., concurs in the result.