[No. 33374. Department Two. January 26, 1956.]

PETER BEST, *Respondent*, v. JUNE BEST, *Appellant*.[1]

*Newman & Newman,* for appellant.

*Geo. H. Rummens, Kenneth P. Short,* and *Paul R. Cressman* (*Richard M. Oswald,* of counsel), for respondent.

ROSELLINI, J.—This suit was instituted by the respondent, seeking a divorce on the grounds of cruelty and personal indignities rendering life burdensome. The appellant answered with a general denial. At the time of trial, she amended her answer and asked for separate maintenance, alleging cruelty and personal indignities on the part of respondent. The trial court granted a divorce to the respondent, awarded him his separate property and approximately one half of the community property, and provided for the payment of alimony for a period of one year. The appellant's cross-complaint was dismissed.

[1]Reported in 292 P. (2d) 1061.

The appellant maintains that the evidence does not establish grounds for a divorce.

In addition to the evidence given by the parties, there was testimony by members of their respective families and friends, with whom they had been associated during the marriage. None of these testified to any matters which would constitute grounds for divorce. The trial court, finding the testimony of the appellant and the respondent in direct conflict, determined that it found the respondent more credible and relied solely upon his testimony in reaching its conclusions as to the facts. In determining whether the evidence is sufficient, we will likewise confine ourselves to an examination of the testimony of the respondent.

The respondent testified that it was necessary for him to make at least three trips to New York each year as a buyer for the apparel store which belonged to his family; that it was not customary for the buyers to take their wives with them on these trips; that he had explained this fact to the appellant, who nevertheless was unhappy because he would not take her with him, and that a compromise was finally reached, whereby she made one trip a year in October. Her presence in New York did not interfere with his work during the day, but he felt obliged to entertain her in the evenings, which interfered with family business conferences.

In January or February of 1954, after a third or fourth unsuccessful pregnancy, and after the respondent had told her that he desired a divorce, the appellant again insisted that she be allowed to go on the scheduled buying trip. The respondent refused, feeling it was not wise from a business point of view, and instead sent her on a trip to Hawaii. It was after her return from this trip that the respondent moved out of the family home. We find nothing in the testimony regarding the New York trips to justify a finding that, as a result of not being allowed to accompany the respondent, the appellant made his home life "miserable." The term which the respondent consistently used in describing his home life was "unpleasant."

Although the respondent testified that the appellant was alternately quarrelsome and silent, refusing to speak to him, he had difficulty in recalling specific occasions or specific accusations. She was disturbed about his mother's attitude toward her, not without justification. The respondent admitted that he was in sympathy with his wife on the two occasions about which he testified. However, he said, she refused to forget about these unfortunate occurrences and reminded him of them whenever they had a quarrel. Whenever he returned from a visit with his mother, the appellant would say, "Well, did you hash me over again?"

We have gleaned from the respondent's deposition, admitted in evidence, and his testimony at the trial a number of matters, in addition to those already mentioned, to which he attaches significance and on which he appears to have relied as grounds for divorce. They may be summarized as follows:

While the appellant is an immaculate housekeeper, she was not always mindful of the respondent's comfort; she neglected regularly to put his laundered socks away, necessitating his going to the basement to find them. Her "attitude" toward him at parties was sometimes "sneering." (Other witnesses, however, had failed to detect this.) On one occasion, she became so annoyed with her own golf game that she walked off the course; however, she later apologized for this. When seated across the room from the respondent, she nevertheless expected him to rise and walk across the room to light her cigarettes. She also expected him to open the car door for her and not to leave her alone at social gatherings. If he did something wrong at home, she wouldn't speak to him for hours or sometimes even days. Although she sometimes listened sympathetically when he told her about his problems at work, often she did not, nor show any interest. She had an exaggerated sense of her own importance, and made mountains out of molehills.

She told two of his friends, on one occasion, that she was thinking of getting a divorce. One of the friends testified and denied this. Chronologically, the incident occurred

after the respondent had told the appellant that he wished to obtain a divorce. On an occasion, four years earlier, when the parties were having dinner with two of their friends, the appellant discussed the trials and tribulations of their marriage; however, the respondent admitted that the evening in question was a particularly harmonious one and he had not been embarrassed. Twice she pushed him out of bed after they had quarreled. She demanded that he obtain for her a position as buyer in the family store, in which almost all of the other members of the family appear to have been employed. This, the respondent said, was an unreasonable demand because the appellant had no experience, and he suggested that she obtain experience in a small store in Lake City, which she was unwilling to do. She had, during quarrels, called him unseemly names.

The result of all this was that the home atmosphere was unpleasant, although the respondent admitted that he was at fault part of the time, but "not over fifty per cent of the time."

Throughout the period of the marrige, the respondent wrote numerous letters to his wife. There are approximately one hundred fifty such letters in evidence. All of them may be characterized as letters of love and affection. In several of the letters written by respondent upon his most recent trip to New York, he expressed his loneliness at being separated from the appellant and his determination that thereafter she would accompany him upon his trips. The respondent's explanation for his letter writing was that the appellant had made him promise to write her every day that he was away from home. He further explained that the reason the letters continued in the tenor of love and affection was that, at the time, the thought of divorce had not occurred to him, although his life was unhappy and he no longer was in love with his wife in the sense that he had been when he first married her.

The letters written by the appellant were not available at the time of trial. The respondent testified that he left them in his bureau drawer when he separated from appellant, and when he requested them for use in the trial some

six months later, the appellant said she had thrown them away. The respondent was permitted to give secondary evidence of their tenor. He testified that in them she complained of his refusal to take her to New York and suggested that his family was responsible for this.

It is difficult to understand how letters as affectionate as those of the respondent could have been written while the acts of which he complains were being committed, unless, at the time, those acts were considered as no more than the ordinary annoyances of married life.

The appellant, on the other hand, maintains that she loves the respondent; that, although the parties have quarreled, the marriage has been generally a happy one; and that she believes they can become reconciled after the appellant has passed through the "phase" of disappointment over their lack of success in having children. We bear in mind, however, that the trial court refused to believe the appellant, and rest our decision upon the testimony of the respondent.

RCW 26.08.110 provides that, in all cases where the court shall grant a divorce or annulment, it shall be for cause distinctly stated in the complaint, proved, and found by the court. In *Fix v. Fix*, 33 Wn. (2d) 229, 204 P. (2d) 1066 (1949), it appeared that the wife had lost interest in the husband. She testified that she would not take him back if he reformed. In reversing a judgment granting a divorce, we said:

"In other words, Mrs. Fix just doesn't care for her husband any more. But, unfortunately for her, plaintiff's indifference or dissatisfaction is not a statutory ground for divorce. . . .

"The dilemma in which the trial judge found himself can be understood when he said to the respondent's mother, as she was completing her testimony:

" 'How can I force these two people to live together as man and wife if they don't want or if one of them refuses?'

"We sympathize with the predicament in which the trial judge found himself. He was convinced that the parties could never become reconciled. He was satisfied that the situation was hopeless. However, the courts are limited in granting divorces to the nine grounds for divorce listed in

the statute. If the legislature, in its wisdom, sees fit to provide other grounds, that is its privilege. We cannot make laws. We can only apply the laws which the legislature makes to the facts in a particular case."

We think the language of that case is particularly applicable here, as is the statement found in *Neff v. Neff*, 30 Wn. (2d) 593, 192 P. (2d) 344 (1948), another case in which we reversed a judgment granting a decree of divorce:

"The testimony in support of the allegations of the complaint and cross-complaint consists of incidents or attitudes which for the most part might be classed as trivia and should have been forgiven and forgotten in the usual give-and-take of married life."

We need not discuss the doctrine of condonation, since, in our opinion, the acts complained of do not justify the granting of a divorce. Neither incompatibility, uncongeniality, dissatisfaction, nor unhappiness constitutes a ground for divorce. *Neff v. Neff, supra; McNary v. McNary,* 8 Wn. (2d) 250, 111 P. (2d) 760 (1941); *Yost v. Yost,* 16 Wn. (2d) 601, 134 P. (2d) 79 (1943). It is apparent that the appellant is immature, that she lacks a sense of proportion and perhaps the ability to recognize her own imperfections and to accept those of her husband gracefully. Her acts, however, fall short of cruel treatment or personal indignities rendering life burdensome.

We have recognized that, in determining whether these grounds have been proven, a subjective approach must be taken. In *Detjen v. Detjen,* 40 Wn. (2d) 479, 244 P. (2d) 238 (1952), relied upon by the respondent, we said:

"Language can, and frequently does, constitute cruel treatment and render life burdensome. The test, however, is subjective rather than objective. It is not the words used, but the effect of them upon the aggrieved party that is determinative." (Citing *Thompson v. Thompson,* 16 Wn. (2d) 78, 132 P. (2d) 734).

The record in that case indicated a course of conduct by the husband over a period of years, characterized by the trial judge as

"irritating, inconsiderate and domineering as to the wife,

and resulting in a strained, highly emotional, nervous home atmosphere, affecting the children and the wife adversely and seriously."

We gave great weight to the fact that the wife was ill much of the time and in a very sensitive condition. The respondent in this case is in no way incapacitated, and, according to his own testimony, his home life was merely "unpleasant."

In *Sullivan v. Sullivan*, 52 Wash. 160, 100 Pac. 321 (1909), another case cited by the respondent, the husband for seven years had refused to speak to the wife or children except when absolutely necessary, made unjust charges of improper conduct, insulted and humiliated the wife's guests, and had made himself so disagreeable that the legitimate ends and objects of matrimony had ceased to exist; which conduct is far more serious than any charged by the respondent in this action.

In another case relied upon by the respondent, *Hokamp v. Hokamp*, 32 Wn. (2d) 593, 203 P. (2d) 357 (1949), the wife had made defamatory statements about the husband's family to his employers, with malicious motives and the intent to injure him in his employment. The incident occurred at the end of the marriage relationship and had never been forgiven or condoned by the resumption of marital relations. The case is not in point here.

*Freeborn v. Freeborn*, 107 Wash. 646, 182 Pac. 620 (1919), wherein we upheld the granting of a divorce on grounds of incompatibility of temperament, has been impliedly overruled by subsequent cases, the most recent of which is *Neff v. Neff, supra*. And see *Detjen v. Detjen, supra*.

Nor does *Sabot v. Sabot*, 97 Wash. 395, 166 Pac. 624 (1917), support the respondent's contention; the wife in that case consistently exhibited indifference and aversion toward the husband without just cause or provocation.

The most that can be derived from the respondent's testimony is that he is unhappy in his marriage and the parties are incompatible. As we have said, these matters do not constitute grounds for divorce.

In view of the fact that the judgment must be reversed, it is unnecessary to discuss the other errors assigned by the appellant.

The respondent abandoned the home of the parties in the spring of 1954. It appears that he has continued to support the appellant. As we held in *Morden v. Morden*, 119 Wash. 176, 205 Pac. 377 (1922), the latter fact does not deprive the court of the power to make provision, in a separate maintenance decree, for the support of the wife.

The judgment is reversed and the cause remanded, with instructions to enter a decree of separate maintenance, with reasonable provision for the support of the appellant.

HAMLEY, C. J., MALLERY, OTT, and WEAVER, JJ., concur.

March 7, 1956. Petition for rehearing denied.