[No. 35479. Department One. January 26, 1961.]

KYRRE BANG, *Appellant,* v. LILLIAN BANG, *Respondent.*[1]

[1]Reported in 358 P. (2d) 960.

*Allan Pomeroy* and *Richard D. Harris,* for appellant.

DONWORTH, J.—This divorce proceeding was instituted by appellant husband. His grounds were cruelty, personal indignities, and desertion. His wife (respondent) denied the allegations of the complaint and cross-complained for a divorce. Her grounds were cruelty and nonsupport. After a trial, the court granted a divorce to each of the parties.

The parties were married at Seattle on December 21, 1946. Appellant was then a bachelor of the age of fifty-five years. He was a commercial fisherman and had worked every season. He was thrifty and had ten thousand dollars in a savings account. No children were born of this marriage.

Respondent had previously been married and at the time of her marriage to appellant she had two grown sons. She was about eight years younger than he. For about thirty years she operated a stand in the Pike Place Public Market, where she at first sold chickens and later flowers. She eventually closed these stands and at the time of the trial, in 1959, she was, and for the preceding three years had been, working as a realtor's agent selling property on a commission basis. Her income from this source in 1959 averaged about four hundred dollars per month.

At the time of the marriage, she had about eight thousand dollars cash in a safe-deposit box, eight thousand dollars in the bank, and owned some real property referred to as the Burien property. At the trial, an expert witness valued it at thirty thousand dollars. Shortly after the marriage, the parties acquired the adjoining parcel, the wife providing about twelve thousand dollars of the consideration, and the husband about four thousand dollars.

In 1957 (during the marriage), the parties acquired a home in Ballard, known as the Sunset Hill property, at a

cost of $18,500. At the time of the trial, there was an outstanding indebtedness against this property in excess of four thousand dollars. They lived here until February, 1959, when respondent left the home and went to live at the Burien place. She told appellant that she would not return! Appellant has continued to reside in the Sunset Hill home. He instituted this divorce action by filing his complaint March 3, 1959.

The case was tried October 28, 1959. After the taking of testimony, the trial court rendered its oral opinion in which it was stated that each party would be granted a divorce.

Thereafter, the husband moved for a new trial, and on December 8, 1959, the motion was argued at length (thirty-three pages of statement of facts). The principal argument by appellant's counsel was that the evidence regarding the husband's conduct was insufficient to support the granting of a divorce to the wife. After a thorough discussion of the evidence, the motion was denied.

Three days later, counsel for the parties appeared in court to present proposed findings, conclusion, and a decree. It is stipulated by counsel that on that occasion

" . . . the appellant [the husband] in open court on December 11, 1959, prior to the trial court's signing of the Findings of Fact and Conclusions of Law and Decree of Divorce, made an oral motion for dismissal of plaintiff's cause of action for divorce, and that the same was considered and denied by the trial court."

The trial court then entered ten findings of fact, of which five are challenged by the husband on this appeal. The decree, entered in accordance with five conclusions of law (after granting each party a divorce), provided substantially as follows:

1. Appellant was awarded the Sunset Hill property and the furniture and equipment therein which was purchased at the time the realty was acquired, and, also, two thousand dollars par value of Norway Center second-mortgage bonds. The proceeds of these bonds were to be used to reduce or retire the existing mortgage on the Sunset Hill prop-

erty and, if insufficient for that purpose, any balance remaining due thereon was to be paid by respondent.

2. Both parcels of the Burien property were awarded to respondent as her separate property, together with the household goods and furniture located on the first parcel. Also, respondent was given the unpaid balance of certain loans made to her sons. Certain articles of furniture then in the Sunset Hill home, but originally in the Burien home, were to be exchanged between the parties. Respondent was also awarded five hundred dollars attorney fees.

Appellant has appealed from the decree, but respondent has not cross-appealed. Neither has respondent filed a brief in this court and, of course, no oral argument by her counsel was permitted.

In his assignments of error, appellant challenges five findings of fact and five conclusions of law (or portions thereof). Under the title of "General error" it is stated in appellant's brief as follows:

"(1) Trial court erred in denying appellant's motion for a new trial upon the grounds and for the reason that the preponderance of the evidence does not sustain the trial court's conclusion of granting a divorce to both parties herein.

"(2) Trial court erred in denying appellant's motion to dismiss his divorce action at the conclusion of the case, but before the signing of the Findings of Fact and Conclusions of Law and the Decree of Divorce by the trial court.

"(3) Trial court erred in granting an allowance to respondent-wife of a reasonable attorney's fee.

"(4) The trial court erred in failing to equitably divide the community and separate property of the parties hereto."

As to appellant's right to abandon his action for a divorce (which he sought to do after the trial, but before the findings, conclusion, and decree were entered), our attention has not been called to any decision of this court or of any other court of last resort where this precise question has been presented. In ordinary litigation, a plaintiff has an absolute right to a voluntary dismissal of his action if requested prior to the court's announcement of its oral decision, provided that his adversary is not seek-

ing affirmative relief. However, in a divorce action, it seems to us that a plaintiff should not be forced against his will to divorce his wife. The law favors an opportunity for possible reconciliation between estranged married couples even if the possibility may appear remote.

We need not decide this interesting question because we are convinced that the evidence produced by both parties was insufficient to support the decree of divorce granted to either of the two parties.

The grounds upon which a divorce decree may be granted to either spouse by the courts of this state are specified in RCW 26.08.020. The only grounds stated in the statute which are material to the issues in the present case are:

" . . .

"(4) Abandonment for one year.

"(5) Cruel treatment of either party by the other, or personal indignities rendering life burdensome. . . .

"(7) The neglect or refusal of the husband to make suitable provision for his family. . . ."

With respect to appellant's action for divorce, he failed to introduce any evidence tending to prove abandonment *for one year*. Thus, the claimed desertion, being of a much shorter duration than required by the statute, does not support the decree. The only reference to this ground in the finding is:

"That the defendant unjustly refused to live with the plaintiff and left the plaintiff shortly before the commencement of this action. . . ."

There is nothing in the findings concerning any cruel treatment of appellant by respondent or of personal indignities rendering appellant's life burdensome.

Thus we find no basis in the record for granting appellant a divorce from respondent.

Turning to a consideration of respondent's cross-complaint for a divorce from appellant on the grounds of cruelty and nonsupport, the portion of the findings relating to appellant's cruelty toward respondent stated:

" . . . That during the last two years that the parties lived together the plaintiff unjustly criticised the defend-

ant and was continually quarreling with her, the gist of said quarreling being that he accused her of insanity during said quarrels and even sought out her daughters-in-law suggesting that a guardian be appointed for her. Defendant was not insane in any manner."

The finding further included a statement that, when appellant was furnished funds to pay taxes on property owned by one of respondent's sons, he paid the taxes, but retained the excess over and above the amount thereof without accounting therefor. This conduct hardly constitutes cruel treatment *of respondent.*

The only remaining portion of the challenged findings which we need to consider is the part relating to appellant's failure to make suitable provision for his family (consisting only of respondent and himself). In this respect the court found:

"That after the marriage of the parties the plaintiff was employed very little and the total amount that he earned was not sufficient to support the community. That the greater part of the support of the community of the parties was contributed by defendant."

This finding, if supported by substantial evidence, would in turn support the awarding of a decree of divorce to respondent.

The evidence shows that appellant went out on commercial fishing boats every season. From 1946 to 1958, inclusive, he earned a total of $36,815.16. He testified that during the remainder of each year he helped respondent while she was in the chicken business, and later in the flower business. He stated that he had done some work in improving the Burien property and had spent a substantial amount of money in acquiring household equipment for the home. In 1956, appellant was in the hospital for an operation, and thereafter was in poor health.

Respondent, in her testimony, did not deny these facts except as to the extent of his illness and the amount of work he had performed in assisting her. Their principal dispute in their testimony was as to how much appellant spent for groceries. She said it was about twenty dollars per year; he said that it was much more than that.

Assuming, however, that respondent made a substantially larger contribution to the support of their household than appellant did, respondent continued this practice for some ten years without complaint before she decided she did not want to live with appellant any longer.

The trial court, during the argument of the motion for new trial, summarized the situation as set forth in the margin.[2]

---

[2]"Now, here we have a woman who was satisfied with her husband for many years, got along all right, and she worked all the time and so did he. I am inclined to think he knew she was apt to do that when he married her. I am not sure when she married him the reflection she cast on the $10,000, but this marriage was for the convenience and comfort of both. This is not the standard romantic marriage where the parties don't know anything at all, it is true. And this sort of affair went on for a long time. Now they are older. They are not physically reacting as they did once upon a time. Now these people are disgustingly solvent. It is unusual to find people of that class so solvent. And I doubt that either one of them has one of these things that identify you as being suckers because you have a ticket that allows you to charge at Frederick & Nelson's. Now, when can that change into nonsupport?

"Is this a principle of domestic relations where we find a man and woman in something like this, and a man has lived in comfort and security, not necessarily luxury, a long time due to the efforts and income of his wife, and this goes on quite a while. Of course, he naturally refrains from assaulting her or anything like that because nobody shoots Santa Claus. Can you then turn that about into nonsupport when allowed to stand so long without any warning because there is some kind—it is not any limitation. What is the word they use when they find that somebody has slept on his rights so long? MR. STEVENS: Laches? THE COURT: Laches includes not only time but loss. It is not limitation of action.

"Now, to state it more brutally: May some female having allowed her husband to roll in security and comfort and suddenly change her mind and say, 'You haven't supported me for the last four years,' which is true, is that a ground for divorce? MR. STEVENS: I think so. THE COURT: Isn't that laches, or something else? MR. STEVENS: I think so. It looks like a team of horses where one horse does all the pulling and that is the situation here. He didn't raise his hand to support the two of them. THE COURT: Well, assume that is true. I am assuming that. And it wasn't necessary either, because they were eating regularly. They had shelter and eating, that is all, and he enjoyed ill health. A lot of people are like that, too. MR. STEVENS: Whatever he could accumulate, he kept. He didn't devote it to the community. THE COURT: I don't think that is cruelty."

■ From our examination of the record, we have become convinced that finding No. 8 is not supported by substantial evidence except for the portion wherein the court found that during their quarrels appellant had accused respondent of insanity and had suggested to her daughters-in-law that a guardian be appointed for her. This latter portion does not, in our opinion, constitute cruelty or personal indignities under our statute defining grounds for divorce.

The evidence is wholly insufficient to support a finding that appellant neglected or refused to make suitable provisions for his family to the extent of his financial and physical ability.

Respondent testified, on cross-examination:

"Q. You are not seriously contending that you were not supported? A. Yes. Q. You always had money in the bank that you could go and get if you needed anything? A. That's right. Q. You say that the cruelty was mostly mental. Was there any physical cruelty? A. No, your Honor, there wasn't. Q. So it is on the grounds of mental cruelty that you are asking for this divorce? A. He is asking for the divorce. Q. Well, you are too, aren't you? A. Yes. Q. You said it is mental cruelty and non-support, as I understand it, is that right. A. Yes. Q. You said before it was mostly mental, now you say it is all mental because there was no physical cruelty whatsoever. A. No, it wasn't, except that he wasn't a husband. Q. It was mental, is that what you mean? A. Yes."

To sum up the situation in which these parties find themselves, we have here an elderly husband who, the next day after his wife left him permanently, instituted a suit for divorce which he now wishes to abandon.

The wife, who is a few years younger, told her husband that she could no longer live with him. She cross-complained for a divorce on two statutory grounds, but failed to produce substantial evidence as to either ground.

The trial court granted each of the parties a divorce and made findings which, in our opinion, are not supported by substantial evidence.

■■■

The parties quarreled rather frequently during the last two or three years of their marriage. The wife wants to be freed from her marital ties because the parties are incompatible. As the trial court described her situation in his oral decision:

". . . They are apparently people of excellent character. This woman wasn't compelled by her new husband to go to work. She didn't express any bitterness against this man at all. On the stand her manner was excellent. And I am sorry that they are bringing this in here because it is too bad that they can't get along for the few years they have got left.

". . . .

"This man is not cruel to anybody. This man has his own ideas of thrift and how to stay solvent. And a man who understands the virtue of solvency always impresses me.

"I don't see anything wrong with this woman either. But she got tired of this man and she went away from there. That is all there is to it.

". . . .

"This woman is tired of working. And the reason is, she reached the age where she is giving out. That is all."

■ This court has several times held that incompatibility is not a ground for divorce in this state. We recently had occasion to discuss the problem in *Wiggins v. Wiggins,* 55 Wn. (2d) 390, 347 P. (2d) 1073 (1960), where we said:

"Much as we would like to affirm this very practical decree, we cannot find in a reading and a rereading of the very short record (68 pages) in this case any evidence which can be said to establish that the husband is the 'party injured' within the purview of RCW 26.08.020. The only thing of which he really complains is of his wife's association with her brother, who has a criminal record. The complete answer to this is the undisputed testimony that when this litigation was being prosecuted, and for more than a year preceding its commencement, the brother was in the penitentiary.

"There is no proof of cruel treatment by the wife, or personal indignities by her, rendering the husband's life burdensome; unless we are prepared to hold, and we are not, that the beginning of an unwarranted separate maintenance or divorce action is, in itself, such cruel treatment

or such a personal indignity, as to give the defendant, *ipso facto,* a ground for divorce.

"It must be understood, as we have heretofore been at some pains to point out, that courts cannot grant divorces because it seems socially expedient or desirable so to do; and that before there can be a divorce the injured party must establish one of the statutory grounds therefor (RCW 26.08.020). 'Neither incompatibility, uncongeniality, dissatisfaction, nor unhappiness constitutes a ground for divorce.' *Best v. Best* (1956), 48 Wn. (2d) 252, 257, 292 P. (2d) 1061; *Donaldson v. Donaldson* (1951), 38 Wn. (2d) 748, 231 P. (2d) 607, 25 A. L. R. (2d) 919; *Fix v. Fix* (1949), 33 Wn. (2d) 229, 204 P. (2d) 1066; *Neff v. Neff* (1948), 30 Wn. (2d) 593, 192 P. (2d) 344."

■ Respondent is not entitled to any allowance for attorney fees because the evidence shows that she is financially able to pay her counsel. *Koon v. Koon,* 50 Wn. (2d) 577, 313 P. (2d) 369 (1957), and cases cited therein.

The decree of the trial court is reversed with directions to dismiss both the complaint and the cross-complaint. Each party shall pay his own costs in this court.

MALLERY, WEAVER, OTT, and HUNTER, JJ., concur.