[No. 37664.    Department Two.    September 9, 1965.]

LUCILE GAMACHE, *Respondent*, v. WILLIAM GAMACHE, *Appellant.**

*Velikanje, Moore & Countryman* and *Palmer, Willis & McArdle*, by *Charles C. Countryman*, for appellant.

*J. P. Tonkoff* (of *Tonkoff, Holst & Hanson*), for respondent.

DONWORTH, J.—Appellant husband has appealed from the decree of divorce granted to his wife. His principal contention is that the trial court erred in granting the divorce on a ground not alleged in the complaint, to wit, cruelty, and on the ground alleged in the complaint, to wit, personal indignities rendering life burdensome.

The parties were married in 1921 and resided near Yakima. They had no property at the time of their marriage,

*Reported in 409 P.2d 859.

but at the time of the trial of this divorce action, in 1963, they had acquired community property worth more than half a million dollars. The greater portion of the record relates to the various items of property owned by the parties and the value thereof. However, the portion of trial court's decree which provided for a division of the property between the parties is not involved in this appeal.

Appellant did not testify at the trial. He was not present in the courtroom at any time, although respondent's counsel repeatedly demanded that he be produced as a witness. Consequently, the only testimony as to the ground for divorce was that given by respondent.

She testified that her husband started drinking to excess about 4 years after their marriage. About 1953, she started a divorce proceeding because of his abusive conduct toward her while he was intoxicated. They were separated for about a year at that time. He told her that he had had a heart attack and she felt sorry for him. He promised that he would never drink or abuse her again, and the parties resumed living together. He stopped drinking for a period of several years, but started again shortly before the present action was instituted in December, 1962.

The incident which precipitated their final separation occurred in Bend, Oregon, while the parties were returning from a vacation trip to Reno. They were accompanied by another married couple, although each couple drove in their own car. They stopped at Bend for the night. Respondent testified:

Q. What happened? A. He was very belligerent, and he wouldn't come and eat dinner with us at night, or anything, and on the way home he was very sarcastic and we stopped at Bend. Q. At that time were your friends with you? A. No, they had their own car. There was a time that they were with us—that is another incident. We stopped at Bend, and there was something wrong with our car and we brought it to the garage. The next morning he went to the bathroom first and he was to pick up the car, and in the meantime he went and had breakfast and he came back and never told me. We usually stopped at an inn, a lovely place a half a block off the high-

way and I wanted to go in there to eat and he didn't want to. He wanted to go in a little dirty pastime restaurant right close by. I said: "If that is the way you feel about it, but it doesn't look appetizing, it is just a half a block, you go there and I will eat here." He got angry and wanted to quarrel on the street. He ran after me and grabbed me with both arms and was pounding me against the building, and I tried to get away from him and he tore my clothes off of me.

Mr. Beaulaurier: I object to any physical abuse. It is not alleged in the complaint.

The Court: We will let it stand. Let's take the points —these are not contested.

Mr. Beaulaurier: Yes, they are.

The Court: Just from the standpoint you deny the facts. The only thing taking into consideration his abuse, that she should have more property.

Mr. Beaulaurier: The thing I am concerned about is, Your Honor, the complaint sets forth personal indignities as rendering life burdensome, and as the Court is aware under the divorce code itself, the grounds upon which the plaintiff seeks to rely must be set forth in the complaint, and I am concerned for fear that this testimony coming in without an objection on my part could be considered by the Court to establish other and different grounds than those pleaded.

The Court: The Court will not consider anything other than considering: did his acts, while living together, influence her health and have an effect on the division of property, if that hadn't happened?

Mr. Tonkoff: For the purpose of the record, Your Honor, I think this does show indignities. I don't know how you can be any more abused than a man-handling when on the street.

The Court: Let's proceed.

Q. What happened? A. There were a lot of people on the street and he didn't even see them. It was like a hideous nightmare. I got away from him and ran in the restaurant and got in a booth, so people could not see the condition of my clothes. He followed me in the restaurant and asked if I had ordered, and he said: "You are not going to eat here either," and he pulled me out of the booth and all the way down the street to the car and then we got in the car and he started to scream and use vile language, and he stopped twice in a wooded area threatening to kill me. Q. Where is the wooded

area? A. Between Bend and Goldendale. Q. Then you got home? A. Then we got home. One of my sons had been using his car and we used my car, and I asked him to bring my car back. I was mortally afraid of him. The boy brought the car and Mrs. Cooper went to Seattle with me and she found an apartment near her daughter in Bellevue, and I stayed there six weeks. I wrote and said I wanted the apartment, I was coming back, and I wanted it. He let me know if anyone had the apartment he was and I was to move out.

On cross-examination, she further testified as to the Bend incident:

Q. When did you decide with reference to your trip to Bend, Oregon, when did you decide to file a divorce? A. I told him on the way home that I was through and I wanted the apartment and that I was going to apply for a divorce. Q. And it was several days after you got back? A. It was just a day and a half and that is because I didn't have a car. The youngest son had his car because our car was in the garage.

In his first assignment of error, appellant challenges the trial court's finding of fact No. 4, which states:

That the defendant has by his conduct demonstrated that he has neither love nor affection for the plaintiff, and has on occasions embarrassed, assaulted, and directed profane language toward the plaintiff, and has on various occasions when in an intoxicated condition heaped personal indignities upon plaintiff and has threatened her life, so that her life became burdensome in the extreme, and as a consequence thereof the plaintiff and defendant can no longer cohabit as husband and wife.

Appellant argues that there is no evidence in the record to show that his conduct had any subjective adverse effect upon respondent. He quotes her testimony (which is set out above) concerning the Bend incident and also with respect to the prior period when appellant was not drinking. He relies on *Robuck v. Robuck*, 62 Wn.2d 917, 385 P.2d 50 (1963) (and cases cited therein), which correctly states the rule to be that in such cases we must apply a subjective test rather than an objective test.

But in this case the uncontradicted testimony of respondent is that appellant assaulted her on the street in Bend by grabbing her with both arms and pounding her against the building, and when she tried to get away from him he tore her clothes off. She said that it was like a hideous nightmare. She then went into a restaurant and he followed her, pulled her out of the booth and down the street to their car, where he started to scream and use vile language. After they left Bend, he stopped the car twice in a wooded area between Bend and Goldendale and threatened to kill her. After getting home, as soon as she could get her car, respondent and the lady who had been on the Reno trip with them drove to Bellevue, where respondent found an apartment near where her friend's daughter lived, and she stayed there for six weeks. She said that during the few days she was in Yakima after the Reno trip she was mortally afraid of appellant.

Appellant did not appear at the trial to deny or explain his conduct as testified by respondent. See footnote 1, *infra*.

In this record, there is an abundance of testimony as to the subjective effect of appellant's conduct and words upon respondent. No additional medical or lay testimony is needed. A continuing assault by a husband on a public street and in a restaurant followed later by two threats of homicide in a lonely wooded area can hardly have a soothing effect on a wife. We think that the rule of the *Robuck* case has been fully complied with.

Appellant next argues that respondent's testimony is insufficient to support finding No. 4 (quoted above). He particularly objects to the portion thereof stating that appellant, when in an intoxicated condition, heaped personal indignities upon respondent "so that her life became burdensome in the extreme."

Respondent alleged in paragraph 4 of her complaint as follows:

> That the defendant has not concealed the fact that he has neither love nor affection for the plaintiff and has by various and sundry acts heaped personal indignities upon plaintiff, rendering her life burdensome in the ex-

treme, so that there now exists a total incompatibility of temperament and that the parties can no longer cohabit as husband and wife.

Appellant denied these allegations in his answer.

At the trial, appellant's counsel objected during respondent's testimony regarding her husband's assaulting her on the street in Bend because cruel treatment had not been alleged as a ground for divorce but only personal indignities rendering life burdensome.

RCW 26.08.020 (5) includes, in stating grounds for divorce, the following:

> (5) Cruel treatment of either party by the other, or personal indignities rendering life burdensome.

The trial court, in ruling on the objection, said:

> The Court will not consider anything other than considering: did his acts, while living together, influence her health and have an effect on the division of property, if that hadn't happened?

The examination of respondent then proceeded. Appellant's counsel did not claim surprise or ask for a continuance or demand a bill of particulars. We think that respondent's testimony as to her husband's conduct (which he did not controvert or explain by any testimony at the trial) was ample to support the decree of divorce. It overwhelmingly established that appellant inflicted personal indignities upon respondent rendering life burdensome and thus entitled respondent to a divorce on the ground for divorce alleged in the complaint.

The fact that the decree also included the ground of cruelty is at most harmless error. Whether appellant's conduct also constituted cruel treatment within the meaning of the above quoted statutory provision is immaterial.

There is no merit in appellant's contention that respondent proved only incompatibility, dissatisfaction, and unhappiness in her marriage as reasons for seeking a divorce. He cites *Bang v. Bang*, 57 Wn.2d 602, 358 P.2d 960 (1961), and cases cited therein, which hold that proof of the existence of these factors are not sufficient to warrant the

granting of a divorce. From our references to respondent's testimony, it is clear that she was mortally afraid of appellant after he had assaulted her in public at Bend and had twice threatened her life on the way home from there. This was no case of mere incompatibilty between the parties. It was a case of severe physical public assault by appellant (who is an alcoholic) followed by threats of more violence and death. The cases cited by appellant have not the slightest bearing upon the case at bar.

Appellant correctly points out that only the legislature may make incompatibility and similar matters legal cause for divorce, and that it has not done so. However, the facts proved at trial show far more than mere incompatibility. Appellant appears to argue that only if the legislature changed the law would respondent have grounds for divorce. This is patently incorrect.

Parenthetically, the practical futility of denying respondent a divorce is demonstrated by the enactment of Laws of 1965, Ex. Ses., ch. 15, which became effective August 6, 1965, and amends RCW 26.08.020(9) to read as follows:

(9) A divorce may be granted to either or both parties in all cases where they have heretofore lived or shall hereafter live separate and apart for a period of two consecutive years or more, without regard to fault in separation.

Since the record shows that respondent and appellant have lived separate and apart for over 2 years already, a reversal of the trial court's decree could not terminate the litigation, but would inevitably precipitate another divorce proceeding in which this additional statutory ground could be made a factual issue.

We do not intend to intimate that the matter just referred to has been given any weight in arriving at our conclusion about the adequacy of proof of grounds under the present law of divorce, but the effect of the new amendment, referred to above, upon the situation of these parties is obvious.

On the basis of the record in this case, we find no merit

in appellant's assignments of error, and the decree of the trial court must be affirmed.

In her brief, respondent requests this court to allow her $7,500 additional attorney fees for services rendered in the trial court and on this appeal. Prior to the trial, the sum of $1,000 had been allowed to each counsel and had been paid by respondent out of a $30,000 balance in a fund created and given to her by consent of the parties.

Since respondent has not cross-appealed from the provision in the decree which provided that "each party shall pay his own attorneys' fees and costs in this action," this court cannot review the allowance of attorney fees made by the trial court for services rendered therein.

With respect to respondent's request for attorney fees to be allowed her in this court, we think that she should be allowed the sum of $1,000. If appellant had appeared and testified at the trial relative to his conduct toward respondent, this appeal might have been unnecessary. In a divorce case involving community property worth more than half a million dollars, he absented himself from the trial and failed to deny or explain his wife's testimony regarding his alleged personal indignities toward her which rendered her life burdensome. No showing was made by affidavit of a physician or otherwise that his health was such as to excuse his absence from the courtroom.[1]

We realize that a wife is not entitled to free litigation at the expense of her husband when she is seeking a divorce, if she is financially able to pay the expenses thereof. See *Bang v. Bang,* 57 Wn.2d 602, 358 P.2d 960 (1961). We are not departing from this rule. However, the property which respondent received in the case at bar was awarded to her

---

[1]When respondent's counsel first requested that appellant be produced as a witness at some time during the trial, the court inquired as to the reason for his absence and his counsel replied: "He is absent this morning because he is not feeling well. He is a man of quite delicate health. . . ." Respondent's counsel stated: "his delicate health—we may go into that. . . . There is nothing wrong with his health. He can frequent the bars and get drunk." The court then said: "Let's argue it later. after we get all the facts."

by the trial court with the expectation that she would have to pay therefrom only the attorney fees for services in the trial court (as discussed above). Furthermore, until the decree of the trial court becomes final, she has no property available to her except the money remaining in the fund created by the previous agreement of the parties referred to above. Appellant appears to have prosecuted this appeal with the intention to cause respondent as much expense and delay as possible. We have found his assignments of error to be clearly without merit. Appellant husband is the instigator of the litigation in this court. Respondent wife is satisfied with the trial court's decree. Under the circumstances of this case, we are of the opinion that the wife should not be required to pay any attorney fees on this appeal. Nothing contained in this opinion shall be construed as affecting in any manner any arrangement made or to be made hereafter between respondent and her counsel with respect to compensation for their professional services in this case.

Under RCW 26.08.190, the court may, in its discretion, allow attorney fees to either party when the complexities and legal problems of the case warrant such award, even though the wife has been awarded a substantial share of the community property in a divorce decree which has not yet become final because of appellant's appeal. See *Abel v. Abel*, 47 Wn.2d 816, 289 P.2d 724 (1955). We think that this statute also authorizes this court to charge attorney fees against appellant husband under the circumstances of this appeal even though respondent wife could, without impoverishing herself, pay her own counsel fees from resources available to her. Expenses incurred by respondent as the result of appellant's dilatory tactics should be paid for by him.

Accordingly, the decree of the trial court is hereby affirmed with directions to enter judgment in favor of respondent for $1,000 additional attorney fees. Respondent will recover her taxable costs in this court.

ROSELLINI, C. J., WEAVER and HAMILTON, JJ., and RYAN, J. Pro Tem., concur.

January 4, 1966. Petition for rehearing denied.