[No. 37375. En Banc. October 28, 1965.]

JOHN B. EDINGER, *Respondent*, v. JESSIE S. EDINGER, *Appellant.**

*Murray, Armstrong & Vander Stoep,* by *Grant Armstrong,* for appellant.

*Campbell & Gober,* by *Lee J. Campbell,* for respondent.

HALE, J.—When Jessie and John Edinger married, September 15, 1937, his father's ownership and management of the Centralia Daily Chronicle did not entirely assuage the doubts or remove the uncertainty from their financial future. At the age of 23, following graduation from the University of Washington School of Journalism and one year of graduate study at Harvard School of Business, John

*Reported in 406 P.2d 959.

Edinger's cash assets consisted of $50. Jessie, with 3 years of college and 2 years of employment as a bookkeeper in her father's hardware store, brought $80 to the marriage. Taking his $50 and matching it with $50 from her $80, they made a down payment on their first house.

Twenty-five years later, when they came before the divorce court, John Edinger could not avoid the aura of success, generated in a large degree by his capabilities as a business executive and his professional competence as a journalist. Although acquiring the paper largely through inheritance, there is little doubt that his skill, training and experience contributed in good measure during their marriage to the newspaper's enhanced value, both in its physical properties its income and intangibles.

The divorce decree made adequate provision for the support and education of the four children, but the wife, Jessie Edinger, seeks a reversal of the judgment in its entirety, urging that her husband failed to show grounds for divorce and that the court erred in failing to provide alimony and in making an inequitable division of the property.

■ First, as to the assignment of error concerning want of grounds, our study of the record shows that it contains sufficient evidence to support the court's findings and conclusions on that issue and the decree granting a divorce will be affirmed. *Altman v. Sigurdson,* 63 Wn.2d 347, 387 P.2d 375 (1963); *Kaufman v. Kaufman,* 60 Wn.2d 1, 371 P.2d 535 (1962).

The division of property, however, does not yield to so brief an analysis when we consider the duration of the marriage, the comparative earning capabilities of the parties and the financial condition in which they will be left by the decree. As to future earnings, the prospects of the parties seem markedly unequal. The husband, as owner and publisher of a daily newspaper and having now the assets of 25 years as a successful journalist, publisher and business executive, will draw a salary of $20,000 a year and derive other income from the newspaper to bring his earning capabilities up to around $40,000 or $50,000 per year.

The wife, conversely, having devoted her time to rearing four children and running the home, never assuming that circumstances would force her to find a job, possesses neither the training nor education to assure her employment. Other than the 2 years she worked for her father as a bookkeeper before her marriage, the record shows no remunerative occupation on Mrs. Edinger's part. Thus, at a time when her employability diminishes with each passing year, she has little experience or training for any gainful occupation save those requiring only the most minimal skills. Since there exists no real conflict or dispute in the evidence as to these facts, we think that the decree, in view of the wife's meager earning potential, fails to make adequate provision for her financial future.

Accepting the plaintiff husband's valuation of the Daily Chronicle stock at a total of $158,000, the trial court awarded to the husband property valued at $198,562.45, and awarded to the wife property worth $43,740, in which was included the family residence at $20,000. The court also allowed the defendant wife $40,000 as a part of the property division, payable $10,000 in cash and the remaining $30,000 at $400 per month with interest on the unpaid balance at 5 per cent annually, thus bringing the wife's share of the property division to $83,740.

This appeal was first heard departmentally and then re-heard en banc. At the en banc hearing, plaintiff was virtually forced to concede that the Daily Chronicle stock had a value of $190,000 instead of the $158,000 figure adopted by the trial court, but argued that this difference should not affect the division of property because the court had before it for disposition all of the property of the parties, and made the division advisedly with all of the facts before it.

There exists no conflict in the evidence as to the husband's capabilities nor the wife's limitations concerning their future earnings; nor in the property award and the division thereof; nor in the financial condition in which the parties may be left by the decree. We are, accordingly, of the view that this court may correct the decree in these

areas where it appears appropriate to do so without further trial. It seems just and equitable to us that the difference between the $158,000 valuation as accepted by the trial court, and the concededly more accurate $190,000 value for the Chronicle stock should be awarded the wife as a part of the division of property, in monthly payments according to the method already prescribed by the trial court.

The decree will be modified, therefore, by awarding to the defendant wife an additional $32,000 to be paid her by the plaintiff, John B. Edinger, at the rate of $300 per month, commencing with the first month next following payment in full of the $40,000 already awarded. Interest will accrue on the entire $72,000 in the manner now fixed by the decree. The defendant is likewise awarded an additional attorney's fee of $1,000 above the amount allowed in the decree, and the cause is remanded for such modification.

ROSELLINI, C. J., DONWORTH, FINLEY, WEAVER, OTT, HUNTER, and HAMILTON, JJ., concur.

HILL, J. (dissenting)—I dissent. In my opinion, the evidence does not substantiate the trial court's finding that the wife treated the plaintiff husband cruelly, or that she caused him to suffer personal indignities rendering his life burdensome. The matters complained of occurred over a period of many years, and were incidents or attitudes that should have been forgiven and forgotten in the usual give and take of married life. See *Bang v. Bang,* 57 Wn.2d 602, 358 P.2d 960 (1961); *Wiggins v. Wiggins,* 55 Wn.2d 390, 347 P.2d 1073 (1960); *Best v. Best,* 48 Wn.2d 252, 292 P.2d 1061 (1956); *Neff v. Neff,* 30 Wn.2d 593, 192 P.2d 344 (1948). Consequently, I would reverse the trial court and direct a dismissal of the divorce action.

Assuming that there were grounds for a divorce, I would not be in accord with the action of the majority in increasing the amount to be paid to the wife by $32,000.

The majority finds that the Centralia Chronicle stock (for the most part the separate property of the husband) had been valued at $158,000, whereas it was actually worth $190,000, and so awards the difference of $32,000 to the wife.

If the husband was entitled to a divorce because the wife's conduct had caused such a complete disintegration of the marital relationship as to warrant a divorce, I do not understand why she, the supposedly culpable party who had already received in excess of $80,000 through the decree, should be rewarded with another $32,000 of the supposedly injured party's separate property.