[No. 36260. Department Two. March 14, 1963.]

VERDA JEANNE MOORE, *Appellant,* v. LYLE DEAN MOORE, *Respondent.*\*

\*Reported in 379 P. (2d) 719.

*Edward P. Ferris,* for appellant.

*John L. Reeder,* for respondent.

DONWORTH, J.—Appellant instituted this action seeking a divorce from her husband. In her complaint she alleged facts constituting cruelty or personal indignities rendering her life burdensome.[1] Her husband, respondent herein, cross-complained, alleging cruel treatment and personal indignities rendering life burdensome, and specifically charging that appellant had been conducting improper associations with other men. The case, tried to the court, resulted in both parties being denied a divorce and appellant being

---

[1] Plaintiff alleges in her complaint, generally, that defendant has rendered her life burdensome, but does not allege "cruel treatment" in the statutory language. However, she alleges that defendant has, among other things, "physically abused the Plaintiff on different occasions by striking and hitting her."

In appellant's brief, the nature of the action is characterized as an action for divorce upon the ground of personal indignities rendering life burdensome. At the same time, it is stated that defendant cross-complained for divorce upon the ground of cruel treatment *and* personal indignities rendering his life burdensome.

Although it is argued in the brief that the acts of respondent-defendant constituted cruel treatment, it is difficult to ascertain whether appellant-plaintiff, at the trial, was relying on only one or both of the alternative grounds for divorce provided in RCW 26.08.020(5). This takes on added significance when it is noted that this court has said that there may be acts that are per se cruel treatment, but that personal indignities rendering life burdensome always contain a subjective element.

granted a decree of separate maintenance. Respondent has not cross-appealed.

Appellant asserts error in the trial court's finding that neither party had proved grounds for a divorce, and in denying her motion for judgment notwithstanding the decision or, in the alternative, for a new trial.

The trial court, before denying the post-trial motions of appellant, in a memorandum decision, thoroughly reviewed the facts and several decisions of this court. It concluded that it would be unjust to the parties and contrary to the rules of law to grant either party a divorce, and it reaffirmed its previous oral decision.

The evidence submitted by appellant was directed toward trying to show that respondent had physically abused her and their two children (aged 13 and 10 at the time of the trial) and that he used improper language toward her and in the presence of the children.

It is apparent from the oral and memorandum decisions that the trial court believed little, if any, of the testimony of appellant and her witnesses in regard to the events to which they testified. However, the trial court was of the opinion that this marriage had been marred by discord from its inception (a period of 13 years), that the parties were incompatible, and that they had provoked each other into whatever conduct they now claim to be improper. The court stated in its oral decision:

"Now then, what have we here before us in the facts in this case? I think the most that we have in this case perhaps, is two people that are so constituted that they are like vinegar and soda toward each other, and then when they mix there is an explosion. You put the two together and you have an explosion; you set up a chemical reaction that is contrary to both of them and I think that that is the attitude of both of these people. There is no question in my mind but that the defendant in this instance here, has magnified his feelings of jealousy; his feelings of distrust. That is, from the facts which have been presented here, that he has magnified those things out of all proportion or justification. On the other hand, I think this plaintiff has conducted herself in such a manner as to deliberately

create such a feeling as that in the mind of the defendant so that it appears to the court there is provocation on both sides here. Now this is a provocation that has been continuing, apparently, ever since these people have been married. It has been some twelve or thirteen years. The record shows that they were married in January, 1947. Apparently for thirteen years here this same attitude has been existing between these parties. Now they endured it all that time. I think each of them realized the situation as it existed. I don't think either one of them, so far as their personal indignities were concerned, were particularly disturbed over them. It had just become a way of life with them. . . ."

And, in its memorandum decision, filed 2 months after the trial, the court said:

"While all of their married life there has been more contention and controversies between them than was conducive to the general tranquility of the home, yet these difficulties have been little more than the give and take ordinarily experienced between married couples, particularly taking in consideration the characteristics of the parties. The testimony and documentary evidence in the case show each of them were sometimes rather rough and crude in their speech and action toward each other. Their difficulties usually arose over small matters and on the spur of the moment and apparently were as soon forgotten. The plaintiff appears to have delighted in telling the defendant of the attention she received from other men which, in turn, created spurts of temper, harsh words from the defendant causing him to act impulsively and to say and do things for which he was immediately remorseful. There is no evidence of infidelity on the part of the plaintiff nor are there any improper acts on the part of the defendant that were not immediately forgiven by the plaintiff. . . ."

The trial court appeared to have several reasons for denying each party the divorce requested: (1) whatever conduct which would otherwise be improper was provoked, (2) that neither party considered the conduct of the other as rendering life burdensome, and (3) that appellant immediately forgave or condoned any improper conduct of respondent.

■ We have, on numerous occasions, said that, in determining whether the grounds of cruelty or personal indig-

nities rendering life burdensome have been proved, a subjective test must be used. *Best v. Best,* 48 Wn. (2d) 252, 292 P. (2d) 1061 (1956); *Saffer v. Saffer,* 42 Wn. (2d) 298, 254 P. (2d) 746 (1953); *Detjen v. Detjen,* 40 Wn. (2d) 479, 244 P. (2d) 238 (1952); *Baselt v. Baselt,* 37 Wn. (2d) 461, 224 P. (2d) 631 (1950).

In the instant case, appellant did not offer any expert testimony on the effect of the alleged conduct of respondent upon her physical or mental health. Appellant's counsel asked her, "Now have his actions caused you any mental suffering or worry or physical suffering or worry?" To which appellant replied, "I would say they have, yes." The trial court had the parties before it for several days, observed their demeanor, and had the right to believe or disbelieve either party. Even if appellant's own testimony were sufficient to establish the subjective element (if believed by the trial court), we cannot say that its determination here was wrong as a matter of law.[2]

Appellant takes the position, in her brief, that respondent's slapping her is per se cruel treatment and grounds for divorce, citing *Schmidt v. Schmidt,* 51 Wn. (2d) 753, 321 P. (2d) 895 (1958), and *Metcalf v. Metcalf,* 50 Wn. (2d) 167, 310 P. (2d) 254 (1957).

In the instant case, appellant testified to only one slapping incident with particularity (which occurred some 6 years before the trial). The trial court indicated some doubt as to the credibility of that testimony. Respondent denied this particular incident, but admitted that he had, in the past, struck appellant. The circumstances are not related other than the testimony of respondent that he had to strike appellant in his own defense, and that he had never struck her about the face. More significant than this testimony is the fact that appellant could not point to particular

---

[2] We note that the answer of appellant did not indicate what kind of effects she was testifying about—whether worry due to mental or physical suffering. Furthermore, there was an absence of any expert opinion. In *Johnson v. Johnson,* 50 Wn. (2d) 56, 308 P. (2d) 967 (1957) (a child custody case), we indicated that medical questions such as nervousness are questions calling for expert opinion.

incidents or relate their circumstances. As the trial court observed:

"The only slapping incident to be found in the testimony with any certainty occurred some 6 years prior to the commencement of this action. There is some testimony of the plaintiff that the defendant slapped her on many occasions but she could not remember the time, place, or why."

This is not a case of a "beating" as related in the *Schmidt* case, *supra*. Under the facts of this case we cannot say that, when a man slaps his wife, this is per se a ground for divorce without regard to circumstances.[3]

Finally, the trial court concluded that appellant had forgiven any wrongful conduct on the part of respondent.

" . . . There is no evidence of infidelity on the part of plaintiff nor are there any improper acts on the part of defendant that were not *immediately forgiven by the plaintiff*. . . ." (Italics ours.)

■ Appellant testified that she had lived with respondent up to May 18, 1960, and had carried on marital relations on a normal basis. At this time, respondent went to work in Alaska on a seasonal construction job, returning September 26, 1960. Appellant filed her complaint for divorce on September 13, 1960, while her husband was still in Alaska. We have said that mere continuance or resumption of normal marital relations is usually sufficient to establish condonation where the misconduct complained of consists of relatively isolated incidents of infidelity or cruelty; but, where the criticized action constitutes a course of conduct over a long period of time, continuation of cohabitation is not necessarily proof of condonation. *Murray v. Murray,* 38 Wn. (2d) 269, 229 P. (2d) 309 (1951).

There was no evidence of misconduct on the part of respondent while he was working in Alaska which would revive any claim of alleged prior misconduct as grounds for divorce.

---

[3]In note 1, *supra*, we indicated that appellant characterized the ground for her divorce action as being personal indignities rendering life burdensome—not cruelty.

We emphasize the fact that respondent's trip to Alaska was not a breakup of the home. Respondent went there to provide a greater income for his family. Between May 18, 1960, and September 26, 1960, respondent sent approximately $2,850 home to appellant. On cross-examination, appellant was asked in regard to letters she had been writing to respondent: "September 6th weren't you writing letters saying you were looking forward to his coming home?" She replied: "I could not say whether it was that late or not. *We had been looking forward to his coming home. We naturally would.*" (Italics ours.) Even if grounds for divorce were sustained by the evidence, such a finding would not support a decree of divorce where the alleged wrongful conduct is condoned. *Robinson v. Robinson,* 23 Wn. (2d) 93, 159 P. (2d) 903 (1945).

The trial court, in its memorandum decision, stated:

"While it is quite 'evidence' that the married life of these parties during the last 3 years has not been very pleasant, there having been quarrels and squabbles between them during that time, but the evidence reveals more a condition of incompatibility and temporary dissatisfaction of each of the parties with the other than cruel treatment or personal indignities rendering their lives burdensome. . . ."

Under the facts of this case, the trial court was not in error when it denied the parties a divorce and granted appellant a decree of separate maintenance. As we said in *Neff v. Neff,* 30 Wn. (2d) 593, 594, 192 P. (2d) 344 (1948):

"This is a situation where it is easy to say that there is nothing to be gained by keeping this man and this woman yoked together; but neither incompatibility, uncongeniality, dissatisfaction, nor unhappiness constitutes grounds for divorce. *McNary v. McNary,* 8 Wn. (2d) 250, 111 P. (2d) 760; *Yost v. Yost,* 16 Wn. (2d) 601, 134 P. (2d) 79."

The trial court's findings of fact in divorce actions are entitled to great weight. *Murray v. Murray, supra; Sinnott v. Sinnott,* 27 Wn. (2d) 520, 179 P. (2d) 305 (1947). After reviewing the record, we are of the opinion that the trial court's ultimate finding of fact that neither party has proved grounds for divorce, when read in light of its oral

and memorandum decisions, is supported by substantial evidence. Therefore, the judgment of the trial court is affirmed.

OTT, C. J., and HAMILTON, J., concur.

FINLEY and HUNTER, JJ., concur in the result.