[Nos. 36736, 36778. Department Two. December 12, 1963.]

IRENE C. BENNETT, *Appellant,* v. HAROLD J. BENNETT, *Respondent.*

IRENE C. BENNETT, *Respondent,* v. HAROLD J. BENNETT, *Appellant.*\*

\*Reported in 387 P. (2d) 517.

*John J. Kennett,* for Irene C. Bennett.

*David O. Hamlin* (of *Hay, Hamlin & Julin*), for Harold J. Bennett.

DONWORTH, J.—This is a consolidated appeal. The first appeal is from a dismissal of plaintiff's suit for divorce. The second appeal is by defendant from an order, entered after the dismissal, granting to plaintiff attorney's fees and costs on the first appeal.

Each appeal will be discussed separately.

Appellant, in the first appeal, is the plaintiff wife, who sued for a divorce, distribution of property, and for attorney's fees to be paid out of such portion of the community property as might be awarded to the husband. (Since the husband is the appellant in the second appeal, hereafter throughout this opinion, to avoid confusion, the wife will be referred to as plaintiff, and the husband as defendant.)

### FIRST APPEAL

Plaintiff's complaint alleges facts[1] which she contends constitute grounds upon which she is entitled to a decree of divorce. After hearing the evidence presented by both

---

[1] The only allegations of plaintiff's complaint relating to grounds for divorce were contained in the following paragraph:

"That for several years last past, defendant has made it clear to the plaintiff that he no longer had any love or affection for her. That in the spring of 1961, defendant advised plaintiff that he saw no point in returning from Alaska to his home in Seattle because there was nothing for him to come home to. Later, on two occasions, defendant wrote to plaintiff, suggesting that she should join 'the club', referring to certain mutual friends of the parties who had become divorced. That defendant's attitude and demeanor toward the plaintiff has completely destroyed all the love and affection which she once had for the de-

parties during a trial of about 2½ hours' duration, the trial court rendered an oral decision, holding that plaintiff had not shown grounds for divorce. Thereafter, plaintiff's motion for reconsideration was denied after oral argument supplemented by written briefs. Her motion for new trial was likewise denied. Findings of fact and one conclusion of law were then entered. Judgment dismissing the complaint was likewise entered, from which plaintiff appealed.

The parties to this action were married June 29, 1929, and have lived in Seattle since their marriage, except for the period from 1933 to 1942, when they lived in Walla Walla. They have one son, who was born in 1933. He is married, and plaintiff had for several weeks prior to the trial resided with him and his family. At the time of the trial, defendant was 56 years of age, and plaintiff was about a year younger.

Defendant has been steadily employed by Seattle Hardware Company since April 9, 1923. In 1950, his employer asked defendant to be their sales representative in Alaska, and since that time he has lived in Alaska 9 or 10 months of the year. The compensation that he was receiving at the time of the trial was about $10,000 a year (with bonus). During the 12 years he has been working in Alaska, defendant sent all his pay checks to plaintiff, who deposited them in a joint account in a Seattle bank. In September, 1961, she wrote him not to send her any more checks because she wanted to be completely independent of him. He subsequently drew out the balance in their joint account.

Plaintiff has been employed by the Bon Marche, a department store in Seattle, since 1941. During the last 12 years

fendant, and it is impossible for her to again live with defendant as husband and wife."

By trial amendment these allegations were amplified by alleging nonsupport since October, 1961, and failure to contribute anything toward plaintiff's attorney fees and costs incurred in the action. It was further alleged that, since the commencement of the action, defendant had spread untrue and harmful gossip concerning plaintiff among their mutual friends. It was further alleged that $1,000 was a reasonable sum for defendant to be required to pay toward plaintiff's attorney fees out of such portion of the community assets as might be awarded defendant.

These allegations are denied in defendant's answer.

she has been employed at its Northgate branch as manager of the candy and bakery departments. At the time of the trial, she was earning about $3,900 annually (plus a bonus of $325 per annum). The community acquired property of the value of $32,513.78, of which approximately $24,000 was cash. In her complaint, plaintiff asked for a distribution of the community property.

Plaintiff's first assignment of error is described in her brief as follows:

"Assignment of Error No. 1 asserts that the trial court was guilty of a gross abuse of judicial discretion in making and entering the italicized portions of Finding of Fact III, which is as follows:

"III. 'In 1943 or 1944, defendant struck plaintiff with his hand. This occurrence *and any other physical harm defendant may have caused plaintiff was provoked by plaintiff. There have been no such occurrences for over ten years.* Approximately twenty years ago defendant was guilty of an act of marital infidelity. *All of the foregoing* was long in the past and *has been condoned and forgiven by plaintiff.* For approximately three years last past plaintiff has been *cold and* indifferent to defendant, has told defendant she does not love him, and has denied him all sexual relations. *As a result of plaintiff's attitude and conduct toward him,* defendant wrote plaintiff a letter in the summer of 1961, from Alaska, indicating he felt there was little reason for him to come home. Plaintiff replied, stating if that was the case, she should get a divorce. *Defendant replied by protesting against a divorce.* Since the institution of this action, *defendant has felt plaintiff to be in need of medical help* and has consulted with the pastor of the church to which the parties belong, plaintiff's supervisor at her place of employment, the adult son of the parties, and one or two family friends, *in an effort to learn if such be the case.*' " (Italics supplied by plaintiff.)

Under the heading "Gross Abuse of Judicial Discretion," in her brief, plaintiff states her position in regard to this assignment:

"This appeal *does not* involve the right of the trial judge to weigh the evidence. This appeal *does not* involve the right of a trial judge to refuse to believe the testimony of a witness in a case where the credibility of the witness

has been attacked; or where there is other evidence in the case which disputes or throws doubt upon the testimony of a witness. We fully recognize the right and authority of a trial judge to decide which witnesses he will believe, in cases where the testimony is in dispute. However, even in cases where the testimony of witnesses is in dispute, a trial judge must have some basis for accepting the testimony of one of the witnesses whose testimony is in conflict. It is our view that a trial judge has no right to ignore the testimony of a witness, whether such witness be a party to the action or not, simply because the judge does not like the way the witness combs his or her hair, or because the witness is calm, thoughtful and collected in a situation where the judge thinks some emotion should be evidenced."

The oral decision of the trial court is herein set forth in full (with the exception of two paragraphs relating to property items) because of plaintiff's principal contention that the court grossly abused its discretion in dismissing her complaint:

"The Court: All right, sir. Thank you.

"I should make certain findings of fact.

"I needn't cover the entire action, because there was no dispute as to the date and place of marriage, the age of the parties, the early history of the marriage, and the fact that each of them is employed and self-supporting, and has been for a number of years.

" . . .

"According to Mrs. Bennett this trouble between the parties goes back to 1929 when they were married, or, prior thereto, and that against her better judgment she married Mr. Bennett without any affection for him and due to his inducements and those of her mother.

"I believe this conclusion by her is a matter of retrospect, a product of her marriage, that started running wild about three or four years ago, and she does not have grounds for divorce.

"On disputed questions of fact, I believe Mr. Bennett and disbelieve her testimony and I reach that conclusion for several reasons.

"First, throughout her testimony she is bitter and unforgiving and not ready to acknowledge any fault on her own part. Whether or not this arises out of any physical or mental problems, I don't know, but it wasn't grounds for divorce. For Mr. Bennett to lean in that direction and to

be inclined to think that she needed some counseling or medical advice, if I had been in his position I would have been inclined the same way. Nor was it grounds for divorce that he talked to her minister and some of the neighbors and friends.

"He had been in Alaska most of the year for many seasons, and he was given no fair explanation when his wife suddenly began a change in attitude, starting with her form of letters when she wrote to him and finally when he came home and she greeted him in an unusual fashion. There was no explanation. She has given none now that I believe credible. All of this caused Mr. Bennett extreme heartache and caused him concern. He sought advice wherever he could get it.

"He tried to find out what doctor Mrs. Bennett had seen so he could talk to the doctor and see what was wrong and if he could help. He sought the minister for the same reason. This is not grounds for divorce. It is an attempt by a loving husband to find out what has happened to his marriage.

"Any blows that were struck or any other physical cruelty that might be complained of were provoked by Mrs. Bennett. This, I find, based on the testimony of Mr. Bennett as to her conduct towards him, which I cannot understand and cannot excuse.

"She complains of some ancient history, going back over twenty years. Yet, the evidence is clear that she condoned such misconduct that he might have been guilty of and freely admitted and sought forgiveness.

"The only other item for which a finding of fact could be made is the subject of attorney's fees for the plaintiff. Although she hasn't shown any need of any—should a higher court disagree with the grounds for divorce and decide that one should be granted—I would say that the amount of one thousand dollars asked for would be reasonable, but I would not be inclined to grant it because of the failure of the plaintiff to show that either she is entitled to a divorce or has need for funds, because she has property and she has employment, and she is able to save something.

"The cases upon which I am relying include Bang v. Bang, 57 Wash. (2d) page 602, and Wiggins v. Wiggins, 55 Wash. (2d) page 390, in which it is stated in each case:

" 'Neither incompatibility, uncongeniality, dissatisfaction, or unhappiness constitutes a ground for divorce.'

"That, I think, is Mrs. Bennett's position."

█ This oral opinion can properly be considered by us in connection with plaintiff's challenge to the italicized portion of finding of fact No. 3, quoted above. *El Cerrito, Inc. v. Ryndak*, 60 Wn. (2d) 847, 376 P. (2d) 528 (1962).

Plaintiff argues that the trial court ignored undenied and undisputed testimony in reaching its decision. We have carefully read all the testimony in the record (including defendant's pretrial deposition), having in mind the several undenied acts of defendant referred to in plaintiff's brief as having been ignored by the trial court.

We do not deem it necessary to review in detail in this opinion all the testimony of the parties. Suffice it to say that defendant, over a period of years, had frequently told plaintiff that if she wanted a divorce she could go ahead and get it. In June or July, 1961, he wrote her from Alaska saying that there was nothing to come home to. She replied: "Maybe I better get a divorce." According to plaintiff, his reaction was:

"A. Well, he was quite shook up about it, and he thought that I was acting hastily. I shouldn't do anything until he came down and talked about it."

It appears that he had later decided to contest plaintiff's suit for divorce because, in his answer, he denied the allegations of her complaint relating to grounds for divorce. See footnote 1.

After all the testimony was taken and the case was closed, the trial court queried his counsel as to defendant's position in the matter, saying:

" . . . Mr. Hamlin, I take it that it remains the defendant's position he does not desire to cross complain and still resists the action on behalf of the plaintiff? Mr. Hamlin: Yes, I think it is, your Honor. The Court: Then it is your position that the action should be dismissed? Mr. Hamlin: Yes."

It was for defendant to decide whether he would oppose his wife's action for divorce, and also whether he would seek a divorce by filing a cross complaint. He apparently changed his mind after he returned from Alaska, but this court must deal with the record as made by the parties.

While no two divorce cases involve precisely the same facts, a somewhat similar situation was before this court in *Moore v. Moore,* 61 Wn. (2d) 611, 379 P. (2d) 719 (1963), in which, after quoting the trial court's oral and written decisions, we said:

"The trial court appeared to have several reasons for denying each party the divorce requested: (1) whatever conduct which would otherwise be improper was provoked, (2) that neither party considered the conduct of the other as rendering life burdensome, and (3) that appellant immediately forgave or condoned any improper conduct of respondent.

"We have, on numerous occasions, said that, in determining whether the grounds of cruelty or personal indignities rendering life burdensome have been proved, a subjective test must be used. *Best v. Best,* 48 Wn. (2d) 252, 292 P. (2d) 1061 (1956); *Saffer v. Saffer,* 42 Wn. (2d) 298, 254 P. (2d) 746 (1953); *Detjen v. Detjen,* 40 Wn. (2d) 479, 244 P. (2d) 238 (1952); *Baselt v. Baselt,* 37 Wn. (2d) 461, 224 P. (2d) 631 (1950).

"In the instant case, appellant did not offer any expert testimony on the effect of the alleged conduct of respondent upon her physical or mental health. Appellant's counsel asked her, 'Now have his actions caused you any mental suffering or worry or physical suffering or worry?' To which appellant replied, 'I would say they have, yes.' The trial court had the parties before it for several days, observed their demeanor, and had the right to believe or disbelieve either party. Even if appellant's own testimony were sufficient to establish the subjective element (if believed by the trial court), we cannot say that its determination here was wrong as a matter of law.

"Appellant takes the position, in her brief, that respondent's slapping her is per se cruel treatment and grounds for divorce, citing *Schmidt v. Schmidt,* 51 Wn. (2d) 753, 321 P. (2d) 895 (1958), and *Metcalf v. Metcalf,* 50 Wn. (2d) 167, 310 P. (2d) 254 (1957).

"In the instant case, appellant testified to only one slapping incident with particularity (which occurred some 6 years before the trial). The trial court indicated some doubt as to the credibility of that testimony. Respondent denied this particular incident, but admitted that he had, in the past, struck appellant. The circumstances are not related other than the testimony of respondent that he had to

strike appellant in his own defense, and that he had never struck her about the face. More significant than this testimony is the fact that appellant could not point to particular incidents or relate their circumstances. As the trial court observed:

" 'The only slapping incident to be found in the testimony with any certainty occurred some 6 years prior to the commencement of this action. There is some testimony of the plaintiff that the defendant slapped her on many occasions but she could not remember the time, place, or why.'

. "This is not a case of a 'beating' as related in the *Schmidt* case, *supra*. Under the facts of this case we cannot say that, when a man slaps his wife, this is per se a ground for divorce without regard to circumstances.

"Finally, the trial court concluded that appellant had forgiven any wrongful conduct on the part of respondent.

" ' . . . There is no evidence of infidelity on the part of plaintiff nor are there any improper acts on the part of defendant that were not *immediately forgiven by the plaintiff*. . . .' (Italics ours.)"

In our opinion, a thorough consideration of the evidence in this case does not warrant our holding that the trial court erred in dismissing plaintiff's complaint. It is within the province of the trial court not only to determine the credibility of the parties (which plaintiff concedes), but, also, to decide, after considering all the evidence, whether plaintiff has sustained the burden of proving the statutory grounds for divorce alleged in her complaint. *Cooper v. Cooper,* 60 Wn. (2d) 208, 373 P. (2d) 109 (1962).

Nor do we think that the trial court in deciding this case substituted his own personal beliefs and speculations for evidence.

We now consider plaintiff's assignment of error No. 4, which relates to the trial court's refusal to allow her attorney's fees for services rendered by her counsel in connection with the trial of the divorce suit.

In finding No. 7, the court found as follows:

"In the event plaintiff were to be awarded a divorce, and in the event her need therefor were established, the sum of $1,000.00 would be a reasonable attorneys fee to be allowed plaintiff. The financial circumstances of the plaintiff do

not indicate her need for an allowance for attorneys fees, and the court finds that such need has not been established."

Plaintiff in her brief challenges this finding (except the portion finding the sum of $1,000 to be reasonable) as a gross abuse of judicial discretion.

The applicable statute is RCW 26.08.090, which provides:

"Pending an action for divorce or annulment the court may make, and by attachment enforce, such orders for the disposition of the persons, property and children of the parties as the court may deem right and proper, and such orders relative to the expenses of such action, including attorneys' fees, as will insure to the wife an efficient preparation of her case and a fair and impartial trial thereof. Upon the entry of judgment in the superior court, reasonable attorneys' fees may be awarded either party, in addition to statutory costs. Upon any appeal, the supreme court may in its discretion award reasonable attorneys' fees to either party for services on the appeal, in addition to statutory costs."

In this case plaintiff asked for no pretrial relief such as temporary alimony, suit money or attorneys' fees. Neither did she seek any permanent alimony at the trial, testifying that she would not accept alimony from her husband under any circumstances since she wanted to be completely independent of him.

She alleged in her complaint (as amended by her trial amendment) that since the commencement of the action, defendant had done certain things described therein which caused her attorney to perform additional services. In the last paragraph of her trial amendment, plaintiff alleged:

"That the aforesaid conduct of the defendant has required additional time and effort on the part of plaintiff's attorney in the obtaining of affidavits, 4 in number, and arguing the matter in court. That the sum of $1,000 is a reasonable sum to require the defendant to pay to the plaintiff to apply upon her attorney's fees herein, and the sum of $100.00 is a reasonable sum to require the defendant to pay for disbursements made and to be made by the plaintiff in the preparation and trial of this action. That said allowances to the plaintiff should be made from such portion of the community assets as may be by the court

awarded to the defendant and/or be made a direct charge against the defendant with respect to his future income."

The trial court, in its oral decision (quoted above), said that, while he found that the sum of $1,000 was a reasonable attorney's fee, he would not grant it "because of the failure of the plaintiff to show that either she is entitled to a divorce or has need for funds, because she has property and she has employment, and she is able to save something."

Regarding the first reason stated, *i.e.* that she has not proven grounds for divorce, this fact has a material bearing on plaintiff's prayer that the allowance to her of attorney's fees should be made from her husband's share of the community assets awarded to him by the court or made a direct charge against his future income. This is because, in the absence of a divorce, the community continues to exist and the husband's earnings and other income will continue to be community property. Thus, since nothing is awarded to him, it is not possible to comply with plaintiff's request.

On the argument on plaintiff's motion for reconsideration, her counsel suggested that payment of the attorney's fees be made from community funds. This would result in each party paying one half of any amount awarded to her for this purpose.

On her motion for reconsideration, plaintiff's counsel further argued that she had shown a financial need for funds to pay for attorney's fees and the costs of the trial. The trial judge, however, adhered to his views on this subject as previously expressed in his oral opinion.

Her counsel cited to the court *Stibbs v. Stibbs,* 38 Wn. (2d) 565, 231 P. (2d) 310 (1951), to the effect that a wife need not pauperize herself by selling her assets to raise funds necessary to pay the cost of a divorce suit. However, in that case the wife was held not to have made a showing that entitled her to an award of suit money.

In *Koon v. Koon,* 50 Wn. (2d) 577, 313 P. (2d) 369 (1957), this court said, at page 581:

" . . . A wife is not entitled to free litigation. If, however, a wife is without funds, it is an abuse of discre-

tion to deny. Conversely, if the wife has money of her own, it is error to award attorney's fees."

The trial court, on the record before it, did not abuse its discretion in refusing to award her attorney fees for legal services performed by her counsel in connection with the trial. According to plaintiff's own testimony, she was a woman of about 55 years of age, in good health, who had been steadily employed by the same employer for 20 years. At the time of trial, she was earning over $4,000 a year (which was her separate property), and was residing with her married son and his family. The trial court properly held that she had not shown a need for financial assistance from her husband or the community property in order to prosecute her divorce suit in that court.

We hereby affirm the decree of the trial court dismissing plaintiff's complaint for a divorce.

SECOND APPEAL

The second appeal is by defendant from an order entered by a judge other than the judge before whom the divorce proceeding was tried. This order (which was entered 34 days after the decree of dismissal by the trial court) was based upon plaintiff's motion entitled "Motion for an Award to Plaintiff from Community Funds, for Attorney's Fees and Cost of Preparing Record on Appeal," supported by her affidavit. At the time that this motion was made, plaintiff had perfected her appeal to this court from the dismissal of her complaint in the divorce action and had furnished defendant's counsel with a proposed statement of facts in that case. The order before us on this appeal allowed plaintiff to withdraw from community funds the sum of $850. The material portion of the order is as follows:

". . . the Court does

"ORDER that the plaintiff, be and she is hereby authorized to withdraw from community funds the sum of $850 and to pay the same to her said attorney, John J. Kennett, and that $500 of said sum shall be applied upon attorney's fees for the services of plaintiff's counsel in preparing and prosecuting an appeal on plaintiff's behalf from the Order of Dismissal entered in this cause on July 27, 1962, and the

balance of said sum shall be applied upon the expenses incurred by plaintiff in paying bond premiums in connection with said appeal and procuring and forwarding to the Supreme Court: (a) Transcript of record on appeal; (b) Statement of Facts, and (c) appellant's Brief; and it is further

"ORDERED that the withdrawal of community funds pursuant to this Order and the entry of this Order shall not be conclusive upon the Supreme Court or either party as to the amount, if any, to be ultimately allowed plaintiff in connection with her aforesaid appeal, and without prejudice to the defendant's right to object thereto, and that this Order is made at this time to assist plaintiff in the preparation and prosecution of her appeal, leaving to the Supreme Court for determination the amount, if any, to be awarded to plaintiff as attorney's fees and costs in connection with this appeal."

Defendant has appealed from the entry of this order and assigns error to: (1) the refusal of the trial court to grant him a continuance, when he was absent in Alaska at the time of the hearing on plaintiff's motion when he wanted to file an affidavit in opposition thereto, which he claims was an abuse of discretion; (2) (a) that the superior court abused its discretion in allowing plaintiff money for attorney's fees and costs on appeal because she failed to show the need for such allowance, and (2) (b) that the superior court was without jurisdiction to hear the motion after notice of appeal had been given from the dismissal of the divorce action.

■ Regarding the first ground for reversal, the granting or denying of a continuance rests in the sound discretion of the trial court and will not be disturbed unless there is an abuse of discretion. *MacKay v. MacKay,* 55 Wn. (2d) 344, 347 P. (2d) 1062 (1959), and cases cited. We find no abuse of discretion by the trial court in denying the continuance, for there is no showing as to what the affidavit of the husband would have stated, if produced, and the absence of his trial counsel did not constitute ground for a continuance because his associate, who represented defendant at the hearing on the motion, had available to him the

proposed statement of facts in the divorce action which was in his possession.

■ Second, defendant complains of the granting of the allowance to plaintiff, because there was no showing of need by her. We think that plaintiff's affidavit (quoted in part below)[2] is a sufficient showing to warrant the trial court in concluding that she did have a need for an award out of the community property to enable her to prosecute her appeal. There is nothing inconsistent in the finding in the divorce action that plaintiff did not at the trial have such need and in the finding of need for funds on appeal. The award for expenses of her appeal is based upon an entirely different record from that before the trial court, and so a different result could logically be reached. The finding

[2] "That the costs of properly preparing and presenting the aforesaid appeal will result in a cost to the plaintiff of approximately $1,250.00, which includes the cost of: (1) transcript of record on appeal, (2) Statement of Facts, (3) Bond premiums, (4) printing Appellant's Brief, and (5) attorney's fees.

"That plaintiff does not have separate property (her earnings acquired since the separation of the parties) to exceed $235.00.

"That plaintiff's monthly salary as a department manager at Bon Marche, Northgate, is $325.00 gross, and for the past two years her bonus at the end of the year has been approximately $325.00.

"That all of the other assets of the parties are community property. That plaintiff could draw money out of community joint bank accounts, but is afraid so to do because she was criticized by the judge at the conclusion of the trial because she had used funds from a joint account, to make six advance payments on account of the mortgage on the home of the parties. The court believed the funds so used by her for said purpose to be community funds, although affiant contends they were her separate funds, arising from her earnings subsequent to the separation of the parties.

"That affiant paid to her attorney, shortly after the commencement of this action, the sum of $120.00, and her said attorney has advanced on her behalf the sum of $220.80, which means that her attorney, in addition to not being paid for his services in the trial court, is actually out-of-pocket in the sum of $100.80.

"That affiant believes it is only fair and just that the court enter an order providing that she may have the sum of $1,250.00 from community funds for the aforesaid purposes in connection with the aforesaid appeal. That the court should direct the defendant to forthwith make such sum available to her out of community funds in his possession."

of need is a matter within the discretion of the trial court. *Dakin v. Dakin,* 62 Wn. (2d) 687, 384 P. (2d) 639 (1963). We find no abuse of discretion.

Third, defendant claims that Rule on Appeal 15 (RCW Vol. 0) deprives the superior court of jurisdiction to award attorney's fees and costs after notice of appeal has been given.[3] The question of loss of jurisdiction by the superior court by the operation of Rule on Appeal 15 has never been considered in this context, but, there are at least six cases that have allowed this procedure since the adoption of the rule. *State ex rel. Atkinson v. Church,* 37 Wn. (2d) 814, 226 P. (2d) 861 (1951); *Platts v. Platts,* 45 Wn. (2d) 853, 278 P. (2d) 679 (1954); *Best v. Best,* 49 Wn. (2d) 128, 298 P. (2d) 855 (1956); *Stringfellow v. Stringfellow,* 53 Wn. (2d) 359, 333 P. (2d) 936 (1959); *Morgan v. Morgan,* 59 Wn. (2d) 639, 369 P. (2d) 516 (1962); *Moore v. Moore,* 60 Wn. (2d) 62, 371 P. (2d) 630 (1962).

The wife in a divorce action is generally allowed funds to prosecute or defend a divorce action when the test of the wife's need (and the husband's ability to pay) is satisfied. Great hardship would be imposed upon a spouse in such a case should she have to wait until the appeal is decided before receiving financial aid. A spouse is entitled to have a fair hearing of the action and this includes an appeal to the supreme court. The superior court has jurisdiction to consider the question of the wife's attorney's fees and costs on appeal, even though a notice of appeal has been filed in the divorce action.

In *Ovens v. Ovens,* 61 Wn. (2d) 6, 376 P. (2d) 839 (1962), we considered the statutory authority of this court to allow attorney's fees and costs on appeal under RCW

---

[3] This claim is founded on the contention that Rule on Appeal 65 (RCW Vol. 0) abrogated the predecessor of Rule on Appeal 15, which was RRS § 1731. Under the former statute, such procedure would be allowed, but it is contended that the pertinent language, to wit, ". . . the superior court shall, nevertheless, retain jurisdiction . . . for all purposes in so far as the cause is not affected by the appeal," has been eliminated from Rule on Appeal 15. Defendant claims Rule on Appeal 15 now is the only effective provision regarding the jurisdictional question.

26.08.090, *supra,* where the trial court had declined to do so. In discussing this question, we said:

"Finally, appellant asserts that the trial court erred in denying her request for attorneys' fees and costs on appeal, and urges that, upon the record, this court should exercise its statutory authority (RCW 26.08.090), and allow appellant attorneys' fees and costs.

"The test with reference to the allowance of attorneys' fees and costs is based upon the need of the one requesting them and the ability of the other to pay. *Moore v. Moore,* 60 Wn. (2d) 62, 371 P. (2d) 630 (1962); *Kain v. Kain,* 51 Wn. (2d) 387, 318 P. (2d) 955 (1957); *Koon v. Koon,* 50 Wn. (2d) 577, 313 P. (2d) 369 (1957). The respondent recognizes the rule, but asserts that the record does not establish need on the part of the appellant, and, in oral argument, suggested that appellant could sell the 1956 Cadillac automobile to finance her appeal.

"Appellant was awarded household furniture, an automobile, a $6,500 lien on the family home, payable within two years, her personal effects, 'All life insurance policies upon her life,' and a $90 income tax refund. None of these items was income producing property. Further, the trial court found that the appellant was presently physically unable to support herself. Nor did the court indicate that the support and alimony allowances were contemplated to be sufficient to encompass payment of attorneys' fees and costs on appeal. Appellant has established need, and the respondent's ability to pay is not in question. Based upon these facts, we will allow the appellant $500 attorneys' fees, in addition to her costs on this appeal."

We now reaffirm our position in the cases cited above, and hold that Rule on Appeal 15 does not deprive the superior court of jurisdiction to hear a request by a wife (made subsequent to taking an appeal) for an allowance for attorney's fees and costs on appeal in divorce actions. In this case the wife was asking that these items be paid from community property in which she owned an undivided half interest. Furthermore, since her complaint for a divorce had been dismissed with prejudice by the trial judge on July 27, 1962, the marital community was still in existence and the husband was still in control of the community personal property. The order of August 30, 1962,

authorized plaintiff to withdraw the allowances for attorney's fees and costs from community funds.

A summary of the results reached in these two appeals is set forth below:

In Cause No. 36736, the judgment of the trial court is affirmed. Having made application to this court for an additional award for attorney's fees (in addition to the sum of $500 allowed by the order of the second trial court), no additional award is allowed. Costs on this appeal are awarded to plaintiff, to be paid out of community funds to the extent that such costs exceed the sum of $350 previously awarded for costs therein.

In Cause No. 36778, the order of the trial court is affirmed. Since the award of attorney's fees in an appeal of a divorce action is within the discretion of this court, we hereby award plaintiff $500 attorney's fees on this second appeal for services rendered in opposition to defendant's appeal. Costs of this appeal are also awarded to plaintiff. These items shall be paid from community funds.

It is so ordered.

OTT, C. J., FINLEY, and HAMILTON, JJ., and STAFFORD, J. Pro Tem., concur.