IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of, | ) | |
| | ) | No. 36282-5-III |
| LORI VAN DE GRAAF, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROD D. VAN DE GRAAF, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — This is Van de Graaf II.  *See In re Marriage of Van de Graaf*, no.

35133-5-III (Van de Graaf I), for details.  At issue is the propriety of trial court orders

directing appellant Rod Van de Graaf (Rod) to pay "suit money" to respondent Lori Van

de Graaf's attorneys (Lori) to defend against the Van de Graaf I appeal.  We affirm.

PROCEDURAL HISTORY

The facts are known to the parties and will not be recited here, although interested

persons can find some of the information in our Van de Graaf I opinion.  After five years

of litigation, the trial court awarded both parties an equal seven-figure distribution of

assets, although there was comparatively little in the way of liquid assets since the

primary holdings were businesses and real estate.  Rod was ordered to pay Lori $6,000

per month in support and make a transfer payment of approximately $1.17 million, in addition to paying Lori $58,675 for attorney fees expended in the trial court. Rod appealed to this court; we upheld those awards in Van de Graaf I.

Rod had stopped paying spousal support in late 2016 and, after the decree of dissolution entered, did not make the transfer payment and did not pay the attorney fee award. As a result, in the early days of the appeal, Lori had no income. Rod later resumed paying the spousal maintenance and stayed the transfer payment and the attorney fee judgment by posting a supersedeas bond.

Lori sought $65,000 in "suit money" from Rod to pay for her appellate attorneys. Yakima County Superior Court Commissioner Elisabeth Tutsch eventually ordered Rod to pay $30,000 to the appellate attorneys. As a result of contempt motions, Rod made a payment of $10,000 that he alleged was loaned to him by his sister. The remaining $20,000 was never paid.

Meanwhile, extensive enforcement actions occurred in the trial court, requiring Lori to expend fees on attorneys in that court as well as on appeal.[1] She sought additional suit money. Commissioner Tutsch eventually ordered Rod to pay an additional $80,000 in suit money on top of the $30,000 previously ordered. Clerk's Papers at 13. He

---

[1] Many of these actions are at issue in Van de Graaf IV.

appealed that ruling to this court. The single $10,000 payment is the only suit money advanced by Rod to this point, leaving him $100,000 in arrears on those orders.

This court considered this appeal without hearing argument during its March 2019 docket week.

## ANALYSIS

The primary issue presented in this appeal involves the commissioner's suit money orders.[2] Lori also seeks her attorney fees in this court due to Rod's intransigence, while he defends that argument by insisting that he is entitled to attorney fees due to Lori's pursuit of the fees despite his inability to pay and her improper briefing in the trial court. We address first the suit money argument before jointly, although briefly, considering the attorney fee arguments.

*Suit Money*

Rod argues that Lori was financially able to finance her own appeal and that he is not able to do so. We defer to the trial court's factual findings to the contrary.

Advance payment of attorney fees to support an appeal is authorized by RCW 26.12.190(1) and RAP 7.2(d). *Stringfellow v. Stringfellow*, 53 Wn.2d 359, 360-361, 333 P.2d 936 (1959); *In re Parentage of J.H.*, 112 Wn. App. 486, 499, 49 P.3d 154 (2002). RCW 26.09.140 and RCW 26.12.190 authorize the court to award "suit money" on any

---

[2] The initial order was originally part of Van de Graaf I, but we have moved our consideration of that issue to this case.

basis that "may appear just and equitable" "after considering the financial resources of both parties." An award of suit money is appropriate where the requesting party demonstrates a need for advance fees for appeal, and the other party has the ability to pay. *E.g.*, *Baker v. Baker*, 80 Wn.2d 736, 748-749, 498 P.2d 315 (1972) (award of suit money pending appeal was not an abuse of discretion where all of the income producing community property and practically all of the parties' liquid assets were controlled by the nonrequesting spouse); *Stringfellow*, 53 Wn.2d at 360 (trial court should have awarded suit money, alimony, and attorney fees for trial fees where husband retained control and management of the community assets awarded to wife through the use of a supersedeas bond, wife received no alimony or attorney fees at trial, and the only assets available to her were the family residence, a car, and her personal effects).

We review an award of suit money for abuse of discretion. *Bennett v. Bennett*, 63 Wn.2d 404, 417-418, 387 P.2d 517 (1963). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Rod argues that Lori received the largest liquid asset, a retirement account, making her the person most capable of paying for her appellate fees. There are multiple problems with this argument. First, the account is not a true liquid asset. The nature of a retirement account is such that when a party withdraws money prematurely from an account, significant financial penalties and taxes attach to the transaction, increasing the

4

party's current costs and reducing future retirement benefits. Second, Rod was the person who received the most liquid asset—his income from the family cattle business partnership with his siblings. During the post-decree litigation, he has been taking a reduced monthly draw of $7,800 from that operation. Rod possessed the most liquid assets.

On the other side of the ledger, Rod's claim of inability to pay fell on deaf ears in the trial court. The commissioner disbelieved Rod and found him in contempt. The commissioners of both this court and the Washington Supreme Court denied his numerous emergency motions for similar reasons—Rod simply did not demonstrate his inability to pay. The sudden reduction in income resulting from his reduced monthly draw from the family business appeared suspicious, and he did not provide business records to support his claim that reduced business income necessitated the reduction. In addition, his own monthly expenses were minimal. There was testimony that the family businesses paid for Rod's housing and other expenses and there was no evidence that he had any additional expenses other than his support obligation. In addition, he was expending large sums to prosecute the appeals in this case. He also owned significant personal property.

In sum, the record reflected both that Rod had an ability to pay and that Lori did not. The decision to award suit money to her was understandable. There was no abuse of discretion.

Additionally, we believe that the trial court also was free to consider the nature of this litigation in reaching its decision. The original trial judge, the Honorable Michael McCarthy, found that Rod was intransigent and engaged in scorched earth litigation practices designed to impose financial hardship on Lori. On appeal, Rod continued to spend large sums on his attorneys, supposedly based on loans from his parents and sister. The desire to spend money he did not have while refusing to pay his court-ordered suit money obligation could be seen as just one more instance of attempting to force Lori to waste resources. This, too, would justify the suit money award.

The suit money orders were well within the discretion of the commissioner. There was no error.

*Attorney Fees*

We jointly consider the competing arguments concerning attorney fees on appeal. We award Lori her attorney fees for briefing of this appellate cause number due to Rod's intransigence.

Attorney fees may be awarded on appeal in dissolution cases when one party has need for an award and the other party has the ability to pay. RCW 26.09.140. They also may be awarded on appeal due to intransigence. *In re Marriage of Mattson*, 95 Wn. App. 592, 606, 976 P.2d 157 (1999); *Eide v. Eide*, 1 Wn. App. 440, 445-446, 462 P.2d 562 (1969).

In Van de Graaf I, this court awarded Lori her fees on appeal due to Rod's intransigence. We do so again here.

There is no right to appeal a civil case at public expense, except in a few very narrow circumstances. *E.g.*, *In re Marriage of King*, 162 Wn.2d 378, 174 P.3d 659 (2007). Accordingly, most litigants who cannot afford a discretionary civil appeal either represent themselves or forego the appeal altogether. Here, Rod has chosen a different path—partial payment of appellate expenses through the largesse of his family. We use the word "partial" purposefully. Scorched earth litigation is designed to impose costs on all involved, often with the goal of leaving the winner with a pyrrhic victory. Here, Rod's efforts to extensively litigate without cost to himself and to force Lori to bear significant costs (or give up) while refusing to pay the suit money is just another example of his intransigence. He simply cannot claim poverty while pursuing expensive, discretionary litigation. No rational person would borrow and spend many times the original suit money order to challenge that award.

That conclusion, along with the trial court's rejection of his claims of inability to pay, eliminates Rod's argument that Lori has been improperly pursuing payment from him. As to his claim that Lori's trial court briefing was deficient, we see no error. More importantly, Rod has not demonstrated how the motion for additional suit money harmed his ability to defend against the claim. By that point, the trial court had already awarded the first $30,000 in suit money, Rod still had not paid the judgment to Lori, and the court

and parties were well aware of the extensive litigation in both the trial court and this court concerning the decree. Referring the trial court to the files and previous rulings in the case was adequate notice of why Lori was seeking more suit money. Litigation continued with no payments from Rod and expenses for both parties mounting quickly. Rod has not demonstrated reversible error occurred.

We grant Lori her reasonable attorney fees for the briefing and motions filed under this cause number, subject to her timely compliance with RAP 18.1.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Siddoway, J.